STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Edward JOHNSON, Defendant-Appellant.†

Supreme Court

*No. 87–1471–CR. Argued January 5, 1989.—Decided May 10, 1989.*

(Also reported in 439 N.W.2d 122.)

† Motion for reconsideration granted June 20, 1989. BA-BLITCH, J, took no part.

For the plaintiff-respondent-petitioner the cause was argued by *Paul Lundsten*, assistant attorney general, with whom on the briefs was *Donald J. Hanaway*, attorney general.

For the defendant-appellant there was a brief and oral argument by *Charles Bennett Vetzner*, assistant state public defender.

DAY, J.   This is a review of an unpublished court of appeals' decision which reversed a judgment of conviction and order by the Circuit Court for Dane County, Honorable Michael B. Torphy, Judge. The defendant, Edward Johnson (Johnson), was convicted by a jury of two counts of second-degree sexual assault,

contrary to sec. 940.225(2)(a), Stats. 1987–88.[1] Exercising its discretionary reversal power granted to it by sec. 752.35,[2] the court of appeals reversed Mr. Johnson's conviction. It ruled the real controversy was not fully tried because evidence that the victim was not intending to pursue a civil suit against the defendant for the alleged assault was introduced at the trial. We reverse.

There are two issues presented: First, is evidence that a complainant has not contemplated or initiated a civil action against the defendant admissible in a criminal trial before such an assertion is made by the defendant to challenge the victim's credibility? We hold it is not. Second, did the court of appeals abuse its discretion by reversing the defendant's conviction in this case? We hold that a court could not reasonably conclude the inadmissible evidence so clouded a crucial issue that it prevented the real controversy from being fully tried. Thus, we conclude the court of appeals abused its discretion and we reverse its decision.

Johnson was accused of committing two counts of sexual assault. He was tried before a jury in a trial

---

[1]**940.225 Sexual assault (2)** Second degree sexual assault. Whoever does any of the following is guilty of a Class C felony:

(a)   Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence.

[2]**752.35 Discretionary reversal.** In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

which lasted one day. In his opening statement the prosecutor told the jury that "[B.] is not here, as you will hear, to gain any money, to gain any sympathy. You will hear from her that she has no, absolutely no reason whatsoever to get on that witness stand and lie." Seconds later he once again stated B. had "no reason to falsify." At the end of his opening statement he told the jury:

> [B.] will tell you that there's no reason in this world whatsoever why she would testify falsely. The first lawyer she ever saw in this case was a member of the District Attorney's office a month and a half, two months ago. She'll tell you there are no pending lawsuits. She hasn't filed a civil law claim or anything.

No objection was made by defense counsel to those remarks.

As the first witness for the state, B. testified as follows: B. entered the tavern where Johnson worked just before closing time. B. stated she saw a couple sitting at the bar and Johnson standing behind the bar. The juke box was playing. She asked Johnson, who she knew from previous visits to the tavern, if she could use the toilet. Johnson said "yes" and asked B. if she wanted to "get high." B. said she "wasn't interested" and went into the toilet.

Johnson followed her and again asked if she wanted to "get high." Once again she said "no" and asked him to leave. Johnson grabbed B. and pushed her up against a wall. He began kissing her as B. tried to push him away and she continuously asked him to stop in a "raised" voice, but said she was not "yelling." Johnson partially disrobed her and began "jabbing" his hand into B.'s vagina. B. said "it hurt a lot" and

repeatedly asked him to stop. Johnson then pulled his own pants and underwear down, grabbed B. and pushed her down on the toilet. He grabbed her and forced her to commit fellatio.

Johnson then pulled his pants back on and ran out the door. B. dressed, threw water on her face, and gagged into the sink. She ran out of the bar and drove home. B. stated numerous times that she never desired, encouraged or consented to any part of the assault.

When she arrived home, she called a friend and she changed her clothes. She noticed there was blood on her underpants. She stated that it was not menstrual blood. Her vagina was also sore. Her friend came over and they talked, but B. did not seek medical attention or call the police. B. also talked to a friend who was a police officer, but asked that it remain personal. Sometime thereafter, a police officer called to investigate the incident.

At the end of the direct examination, the following exchange took place:

Q   Other than myself and another member of the District Attorney's office, have you ever seen a lawyer about this case?

A   No, I haven't.

Q   Have you filed a civil lawsuit against either [the tavern] or Edward Johnson?

A   No, I haven't.

Q   Is there any lawsuit pending seeking civil damages such as money?

A   No.

Q   [B.], is there any reason in the world whatsoever why you would testify falsely against Edward Johnson?

422

A  No.

Once again, counsel for defendant did not object.

On cross-examination, Johnson's counsel questioned B. about a possible civil lawsuit.

Q  On direct examination Mr. Bablitch inquired of you as to whether or not you've seen a lawyer and commenced a civil lawsuit. Do you remember those questions?

A  Yeah.

Q  Are you aware that a conviction in this case would mean almost an automatic victory in a civil suit?

A  No, I'm not aware of it.

Q  And you haven't talked to your friends about the possibility of your going to trial in a civil suit against him, have you?

A  No, I haven't.

The last questions on redirect by the prosecutor were as follows:

Q  Had you ever talked to your friends about filing a civil lawsuit?

A  No.

Q  Do you know what a civil lawsuit even is?

A  Not really.

After B. finished testifying, her friend testified how upset B. was shortly after the alleged assault. B.'s employer at the time she was allegedly assaulted was the next witness for the prosecution. She testified that B. was almost never late for work, but on the morning

after the incident, B. called in upset saying she would not be in at work because she had been raped.

B.'s roommate at the time the alleged assault occurred was the prosecution's fourth witness. She testified that B. was upset the night of the assault and the morning after. B. told her that she had been sexually assaulted at the tavern by Johnson. Two of these witnesses said B. was a quiet person who usually kept to herself. All three testified that they believed B. was an honest person. The prosecution next called the investigating officer. Its last witness was a counselor from the Dane County Rape Crisis Center.

The defense first called the person who, according to the tavern's business records, was working with Johnson on the night in question. The witness testified as to the regular closing routine of the tavern and his general experiences in closing with Johnson. He, however, could not remember the specific night of the alleged assault or whether B. was there on that night.

A woman with whom Johnson shared living quarters testified next for the defense. She stated that on the night in question she called the tavern to ask if Johnson needed a ride home. He declined, saying he would get a ride from his co-worker. She also said that one night Johnson and she encountered B. at a basketball game. Johnson said "hi" to B. and B. "smirked" and turned to her friend. Johnson commented to the witness, "I wonder what that's all about?"

Johnson was the last witness for the defense. He stated that B. came into the tavern and started telling him how she was partying and that she was feeling good. She then kissed Johnson, who just stood there. B. asked for a drink but Johnson told her it was too late. She then kissed him again and this time he kissed her back. They kissed for a few minutes and B. opened up

the bathroom door. B. began backing into the bathroom and asking where they could go. Johnson replied that he and his co-worker were waiting to go home. She continued kissing Johnson and she started rubbing his pants. He began touching her and this continued for a few minutes until they heard Johnson's co-worker. Johnson said they had to go. He left the bathroom and went back to the bar. He later returned to the bathroom and B. ran out. Johnson stated that he never forced B. to engage in any sexual contact, that B. initiated it all, and all that happened was some kissing and mutual rubbing on the outside of their clothes. On cross-examination, the prosecutor asked Johnson if he was being sued by B. Johnson stated he did not know.

In his closing argument, the prosecutor stressed that this was a question of B.'s word against Johnson's word. "The question is credibility and for you the question is whether or not the defendant is lying or was [B.] lying." The prosecutor also stated "the first time she saw a lawyer in this case was when she came to a D.A. in the office and saw an associate of mine."

The prosecutor continued to stress that B. had no reason to lie—"what motive does she have for falsifying? The Judge tells you—told you that in considering the credibility of witnesses you should consider their possible motives for falsifying. She has none .... she's got not a thing to gain by telling you strangers about that." He also asserted Johnson had plenty of reason to lie.

Defense counsel, in his closing argument, asserted that B.'s story was unreasonable and inconsistent. On rebuttal, the prosecutor stated that "B. is not asking you to give her any money." The prosecutor ended by once again noting B. had no reason to lie.

Johnson was found guilty of two counts of second-degree sexual assault contrary to sec. 940.225(2)(a), Stats. He was sentenced to five years imprisonment. Counsel for Johnson moved for postconviction relief, including a claim that B.'s testimony concerning a civil suit against Johnson was improper.[3] The circuit court entered an order denying the motion.

Johnson appealed the judgment of conviction and the circuit court's order denying his postconviction relief. Johnson's counsel raised two issues: Whether evidence that the victim was not intending to sue Johnson for civil damages as a result of the assault, which was offered to bolster her credibility by discounting any motive to falsify, was erroneously admitted and warrants the exercise of the court of appeals' discretionary power to order a new trial; and whether Johnson was denied the effective assistance of counsel.

The court of appeals held that the "non-litigation" evidence was inadmissible in this case because it bolstered B.'s credibility in an area that was not specifically attacked first by the defendant. Relying on *State v. Penigar,* 139 Wis. 2d 569, 408 N.W.2d 28 (1987),

---

[3]An additional claim in the postconviction relief motion alleged that B. had formally retained an attorney concerning the actions relating to this criminal case shortly after the trial. A letter from B.'s counsel to counsel for the tavern was attached to the motion. The letter was dated six days after this criminal proceeding.

In its decision on the postconviction motion, the circuit court noted the evidence that B. had discussed civil counsel representation only a few days after the criminal trial. But it correctly concluded that "[t]his evidence does not show she lied at trial." We agree with the circuit court and consequently do not consider the allegations that B. retained counsel shortly after the criminal trial in deciding this case. We find no evidence in this record which shows B. considered or discussed a civil suit before or during the criminal proceeding.

the court of appeals reversed the conviction and remanded for a new trial because "circumstances of the trial prevented a fair trial of the factual issues of the case." The state petitioned for review and we accepted the petition. The court of appeals did not address the question of whether Johnson was denied effective assistance of counsel. This issue was not briefed by the state or Johnson, nor did Johnson cross-petition to have this issue considered on review. Therefore, such issue is not before us.

## I. NON-LITIGATION EVIDENCE.

Both the state and Johnson recognized this was a question of credibility of the complainant and Johnson because there were no other witnesses to the alleged assault. Both also agree that some sexual contact occurred. B. claimed she was forced, Johnson alleged B. consented.

The court of appeals correctly held that one cannot bolster a witness's credibility until such credibility is attacked. Once an attack is made, the response may only be to that specific attack. The court of appeals cited the general standard as stated in *McCormick on Evidence*:

> The general test ... is whether [the bolstering] evidence .... is logically relevant to explain the impeaching fact. The rehabilitating facts must meet a particular method of impeachment with relative directness. The wall, attacked at one point, may not be fortified at another and distinct point. Credibility is a side issue and the circle of relevancy in this context may well be drawn narrowly.

E. Cleary, *McCormick on Evidence,* sec. 49 at 116 (3rd Ed. 1984) (footnote omitted).

The court of appeals also cited this court's decision in *Virgil v. State,* 84 Wis. 2d 166, 181, 267 N.W.2d 852 (1978), wherein this court concluded that evidence of a witness's prior consistent statements were not admissible where "no attack at any time was made upon his credibility." This court held that under such circumstances, "[a]ny effort to bolster [the witness's] in-court testimony ... was inappropriate, and such testimony was inadmissible. ..." *Id.*

The state contends this is one of those circumstances where such testimony is admissible because "[i]n our litigious society it is not unlikely that any given jury will include one or more members who suspect that a person alleging assault might also be pursuing civil damages." The state cites no authority for this proposition. Even if true, we conclude it does not warrant using such evidence absent a specific attack.

Unless there is a specific attack that a witness has or may start a civil lawsuit against a defendant, evidence that the witness is not pursuing a civil action is inadmissible in a criminal trial when it is used to bolster such witness's credibility.

## II. COURT OF APPEALS' DISCRETION.

After determining that an error was committed, the court of appeals reversed the conviction of Johnson pursuant to its discretionary power granted by sec. 752.35, Stats. It held the real controversy had not been fully tried.

This court "will ordinarily refrain from reviewing a discretionary determination of the court of appeals."

*State v. McConnohie*, 113 Wis. 2d 362, 369, 326 N.W.2d 781 (1983). If this court does review, we must review the court of appeals' decision as we would any other exercise of discretion. *Id.* 113 Wis. 2d at 370. "[W]hether or not we would have agreed with the decision of the court, we will uphold the discretion of a court we are reviewing if the decision made on appropriate facts and the correct law is one which a court reasonably could have reached." *Id.* (citation omitted). *See also McCleary v. State*, 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971) ("[T]his court will not find an abuse of discretion if there exists a reasonable basis for the trial court's determination") (citation omitted); *Schumacher v. Schumacher*, 131 Wis. 2d 332, 336, 388 N.W.2d 912 (1986) ("We will sustain a discretionary act ... if the court ... reached a conclusion that a reasonable judge could reach").

> There are two circumstances under which we have held that the real controversy has not been fully tried: '(1) When the jury was erroneously not given the opportunity to hear important testimony that bore on an important issue of the case; and (2) When the jury had before it evidence not properly admitted which so clouded a crucial issue that it may be fairly said that the real controversy was not fully tried.'

*State v. Romero*, 147 Wis. 2d 264, 276, 432 N.W.2d 899 (1988) (citation omitted). A finding of a substantial probability of a different result on retrial is not required for a case to be reversed if the real controversy has not been fully tried. *State v. Wyss*, 124 Wis. 2d 681, 735, 370 N.W.2d 745 (1984). We hold that a court could not reasonably conclude the improperly admitted evidence

in this case so clouded a crucial issue that the real controversy was not fully tried.

The jury had the opportunity to view B. on the stand and hear her testimony. They were also able to watch and assess the testimony of three of B.'s friends who described B.'s emotional state shortly after the alleged assault. In addition, B.'s friends also told the jury the story B. had told them.

The jury was also able to consider Johnson's version and his demeanor on the stand. In addition, defense counsel also presented witnesses who supported Johnson's assertions. In viewing the whole record, it was not reasonable to conclude that the remarks and questions by the prosecutor, though improper, so clouded a crucial issue that the real controversy was not fully tried.

In reaching its decision in this case, the court of appeals compared this case with the circumstances in *State v. Penigar,* 139 Wis. 2d 569, 408 N.W.2d 28 (1987). In *Penigar,* this court reversed a court of appeals' decision, which had affirmed a judgment of conviction for third-degree sexual assault because the real controversy was not fully tried. *Id.* 139 Wis. 2d at 586.

Penigar was charged with second-degree sexual assault contrary to sec. 940.225(2)(b), Stats. (sexual intercourse without consent of the victim causing a venereal disease). The victim testified at trial that she never consented to any sexual contact with Penigar. She further stated that "neither before nor after the assault had she had sexual intercourse, or had anyone touched her vaginal area, or had she ever touched anyone else's genitals." *Id.,* 139 Wis. 2d at 575. Penigar contended the victim had consented to the sexual contact. At the conclusion of its case in chief, the state asked permission to amend the charge to third-degree

sexual assault—sexual intercourse without consent of the victim. This was granted by the circuit court without objection by Penigar's counsel. A jury found Penigar guilty of third-degree sexual assault.

After the trial at a presentence investigation interview, however, the victim admitted she had had an incestuous relationship with two of her brothers. Penigar moved for a new trial and the circuit court denied his motion. The court of appeals affirmed the circuit court's decision.

This court held:

> Upon reading the record we conclude that the case hinged on false and inadmissible testimony about the complainant's lack of prior sexual experience. When consent is a determinative issue in a rape trial and the jury's decision on consent turns on testimony about the complainant's lack of prior sexual experience which is both false and inadmissible under the rape shield law, the jury is rendered unable to evaluate the testimony of the complainant and the defendant—whose credibility were the crucial aspects of the trial—because inadmissible, highly prejudicial and false evidence pervaded the course of the trial. Thus we conclude that the real controversy was not fully tried because 'the circumstances of the trial prevented a fair trial of the factual issues of the case.'

*Id.* 139 Wis. 2d at 586 (footnote and citations omitted).

The court of appeals found "the record [here] is indistinguishable from that in *Penigar,* where the victim's consent was also the key issue. Indeed, this may well be a more aggravated case." We, however, find a crucial difference between *Penigar* and the case here.

In *Penigar,* the inadmissible evidence was closely related to the key issue of consent. The state attempted

to use the victim's "testimony about her lack of prior sexual experience to persuade the jury that the victim would not have consented to the intercourse." *Penigar,* 139 Wis. 2d at 584. The inadmissible evidence was used by the prosecutor to persuade the jury the victim in *Penigar* would never have consented.

We agree with the court of appeals that in the case before us, consent was also the crucial issue. The evidence of whether the victim here had filed a civil action against Johnson, however, had no direct connection with whether the victim consented to the sexual contact. That evidence is related to her general credibility as she testified as a witness at trial, not whether she consented to the sexual encounter. The jury was given ample opportunity to assess B.'s credibility.

The actual references to the possible civil suit were slight when measured against the whole record. While there were several references to the subject, it was not a topic which pervaded the atmosphere of the entire trial. When read in context of the complete record, these references are only small isolated items which had no measurable impact on the crucial issue of consent. As such, it cannot be said that a court could reasonably conclude the crucial issue of consent had been so clouded as to prevent the real controversy from being fully tried. Consequently, we reverse the court of appeals' decision.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded with directions to reinstate the judgment of conviction.

JUSTICE WILLIAM A. BABLITCH took no part.

HEFFERNAN, CHIEF JUSTICE (dissenting). The majority opinion in this case correctly states the

standard for determining whether the court of appeals has abused the discretion, provided by sec. 752.35, Stats., to grant a new trial when it appears that the real controversy has not been fully tried. The standard is:

> [w]hether or not we would have agreed with the decision of the court, we will uphold the discretion of a court we are reviewing if the decision made on appropriate facts and the correct law is one which a court reasonably could have reached.

*State v McConnohie,* 113 Wis. 2d 362, 370, 334 N.W.2d 903 (1983).

After stating this deferential standard, the majority opinion determines that the real controversy appears to have been fully tried in this case. In doing so, the majority opinion supplants a function that is properly lodged with the court of appeals.

The issue before this court is not whether it appears that the real controversy has been fully tried, but whether the court of appeals abused its discretion in so finding. As a matter of judicial administration, determination of that question is entrusted to the court of appeals. If this court is going to review convictions using the same standard employed by the court of appeals, court reorganization has gained us little. Because I am not persuaded that the court of appeals abused its discretion by ordering a new trial in this case, I dissent.