STATE of Wisconsin, Plaintiff-Respondent,

v.

Jody E. BETTERLEY, Defendant-Appellant.†

Court of Appeals

*No. 93–1979–CR. Submitted on briefs February 14, 1994.—Decided March 15, 1994.*

(Also reported in 515 N.W.2d 911.)

†Petition to review pending.

165

For the defendant-appellant the cause was submitted on the briefs of *Margaret A. Maroney*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Paul Lundsten*, assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.  Jody Betterley appeals a judgment convicting him of felony theft in violation of § 943.20(1)(d), STATS., obstructing an officer in violation of § 946.41(1), STATS., and forgery in violation of § 943.38(2), STATS., and an order denying his motion for postconviction relief. Betterley contends that the trial court erred by refusing to suppress a diamond ring seized from his jail property box held by the police during his incarceration as a result of an inventory search. Betterley argues that the warrantless seizure of the ring constituted an unreasonable search and seizure in violation of § 968.10, STATS., and art. I, § 11, of the Wisconsin Constitution because (1) no exigent circumstances justified the warrantless seizure, (2) the search and seizure exceeded the lawful parameters of an inventory search and (3) he "had a reasonable expectation that his property would be held only for the reasons which justified the seizure in the first place: to

protect against its loss and to facilitate the safe maintenance of the jail." Betterley also contends that the trial court erred by refusing to grant a new trial in the interest of justice. Finally, Betterley argues that the real controversy was not fully tried because he was arrested and placed into custody the night before his trial, which prevented him from presenting a "look-alike" ring that allegedly would have impeached a prosecution witness' testimony concerning the identity of the seized ring. We reject Betterley's arguments and affirm the judgment and order.

## FACTS

The relevant facts are undisputed. In June 1990, Betterley purchased a size 10-½, 14-carat gold ring with inlaid black Teflon on the sides and a .24 carat diamond center for $738.45 from Cynthia Strohbeen and Robert Breault at Breault's Jewelry Store. Approximately two weeks later, Betterley reported to police and his insurance company that the ring and several other items had been stolen from his apartment in a burglary. Based on Betterley's sworn proof of loss, the insurance company paid Betterley $2,688.50 for the stolen property. Betterley also told Breault that the ring had been stolen.

About one month after Strohbeen heard that Betterley's ring had been stolen, she saw Betterley at a gas station. Strohbeen noticed that Betterley was wearing a ring similar to the one she had sold to him and that he reported stolen. When she commented on the ring, Betterley told her that it was a "cheap copy" made in the Twin Cities.

On April 15, 1991, Betterley met with New Richmond police officer Chris Lundell on an unrelated matter. During the conversation, Lundell noticed that

168

Betterley was wearing a Teflon inlaid diamond ring similar to one Lundell had previously seen at Breault's Jewelry Store, which Lundell occasionally visited. At that time, Lundell did not suspect Betterley had committed a crime. The next day Lundell spoke to Robert Breault about the ring he had seen Betterley wearing. Breault showed Lundell a Teflon inlaid diamond ring that Lundell observed looked exactly like the ring he saw Betterley wearing the day before. Breault then told Lundell that Betterley had purchased a ring with the same design, had reported the ring stolen and made an insurance claim for the ring.

Upon examining the police report concerning Betterley's burglary claim, Lundell observed a photograph of the ring Betterley claimed had been stolen. Lundell noticed that the ring in the photograph looked exactly like the ring he had seen Betterley wearing.

Several days later, Betterley was placed in the St. Croix County jail on a probation hold, apparently by police from a different municipality on unrelated matters. At the time he was incarcerated, Betterley was wearing a ring that matched the description of the ring he had reported stolen. The ring was discovered during an "incarceration search" and placed in a jail property box. Later that day, Lundell learned that Betterley was in jail and that a ring was discovered during an inventory search and was placed in Betterley's jail property box. Lundell asked the sheriff's department to release the ring. Lundell directed another New Richmond police officer to retrieve the ring from the jail, and the police officer removed the ring from the property box without a warrant or Betterley's knowledge and consent.

Lundell showed the ring to Breault, who examined the ring and identified it as the one Betterley had pur-

chased from him in June 1990. Breault described the ring as "very unique." Lundell retained the ring as evidence in a possible insurance fraud investigation.

After Betterley was released from jail, he requested to speak to Lundell. Betterley asked Lundell why Lundell had not returned his ring, and Lundell responded that the ring was being retained as evidence in a possible insurance fraud investigation. Betterley told Lundell that the ring he was wearing when he was placed in jail was a ring that his father had given him.

Betterley was subsequently charged with felony theft and obstructing an officer. Betterley moved the trial court to suppress the ring, asserting that the warrantless search and seizure exceeded the inventory function. Relying on *United States v. Edwards*, 415 U.S. 800 (1974), the trial court denied the motion. Trial was scheduled for April 23, 1992.

The ring from Betterley's jail property box was introduced into evidence at trial. Breault testified that he had measured and examined the ring, noting it was a size 10-½, .24 carat diamond ring. Breault stated that this ring was the same ring he had sold to Betterley in June 1990, because the diamond was the same width, cut, clarity and color, it was stamped with the same unusual manufacturer's stamp and the sides were inlaid with Teflon. Each of these characteristics is unique and enabled Breault to identify the ring as the ring he sold to Betterley.

Contrary to Betterley's statement to Lundell, Betterley's mother testified that she had never seen Betterley's father wearing a ring similar to the ring seized from Betterley's jail property box, that she never knew him to own such a ring and that Betterley had not told her his father gave him a ring. Betterley's mother further testified that the only time she had seen such a

ring was when Betterley came to her house and showed her the ring after he had purchased it. She remembered that she had been shocked because she did not think he could afford the ring, since he was not working at the time.

After the State rested its case, and following the noon break, the jury instruction conference and after Betterley waived his right to testify, Betterley informed the court that he was unable to produce the "cheap copy" ring he claimed he had been seen wearing because it was in the Dunn County jail property box. Betterley had arrived late for the trial that morning because he was in custody in Dunn County. Betterley did not ask for a continuance to produce the cheap ring and informed the court of the cheap ring's unavailability "just [to] mak[e] a record."

James Garnett, Betterley's friend, testified on Betterley's behalf. Garnett testified that shortly after Betterley's father died in February 1990, Betterley sold him a ring that looked similar to the ring seized from Betterley's jail property box for $300 because Betterley needed money. Garnett further testified that in June 1990, Betterley purchased the ring back from Garnett for $300. Garnett noticed that Betterley was wearing a ring that, "just at a glance," looked similar to the ring seized from Betterley's jail property box. Garnett also testified that Betterley was not working at the time.

The jury found Betterley guilty of felony theft and obstructing an officer. Betterley moved the trial court for postconviction relief, arguing that he was prejudiced by the court's refusal to suppress the ring and that his inability to produce the cheap ring prevented the real controversy from being fully tried. At the motion hearing, Betterley's trial counsel testified that one defense strategy would have been to use the

cheap ring to impeach Strohbeen's testimony and corroborate Garnett. The trial court denied Betterley's motion.

## SUPPRESSION OF RING

Betterley contends that the trial court erred by refusing to suppress the ring seized from his jail property box without a warrant. Betterley does not challenge the original inventory search and placement of the ring in a property box, but challenges the New Richmond police officer's subsequent seizure of the ring from the property box. Betterley argues that the seizure could not be justified as an inventory search and seizure pursuant to his incarceration because the objective was not to protect against its loss and to facilitate the safe maintenance of the jail. Rather, Betterley asserts, the search and seizure was an unjustified fishing expedition for incriminating evidence unrelated to the reasons for which he was incarcerated.

When reviewing a denial of a suppression motion, this court upholds the trial court's factual findings unless they are against the great weight and clear preponderance of the evidence. A trial court's application of constitutional principles to the facts of a case is subject to independent appellate review. *State v. Seyferth*, 134 Wis. 2d 354, 358, 397 N.W.2d 666, 668 (Ct. App. 1986). Whether the initial warrantless search of Betterley's jail property box was reasonable and complied with constitutional requirements is a question of law that we review independently of the trial court's conclusions. *See State v. Murdock*, 155 Wis. 2d 217, 226, 455 N.W.2d 618, 621 (1990).

Wisconsin courts have consistently followed the United States Supreme Court's interpretation of the

fourth amendment to the United States Constitution when construing art. I, § 11, of the Wisconsin Constitution. *State v. Bohling*, 173 Wis. 2d 529, 536-37 n.7, 494 N.W.2d 399, 401 n.7 (1993). The United States Supreme Court addressed a similar issue in *United States v. Edwards*, 415 U.S. 800 (1974). In *Edwards*, the defendant was arrested for attempting to break into a post office. Shortly after Edwards was placed in custody, further investigation of the crime scene revealed that entry had been attempted through a wooden window that had been pried open, leaving paint chips on the sill. Ten hours after Edwards was placed in custody, police seized the clothes Edwards was wearing at the time of his arrest and tested them for paint chips. The paint chips matched those found on the window sill. The Supreme Court upheld the trial court's denial of Edwards' suppression motion, ruling that "the police's examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest" was reasonable. *Id.* at 806.

Similarly, here the ring was in the lawful custody of the St. Croix County authorities when the New Richmond police officer examined it and seized it as evidence. The ring was removed from Betterley's jail property box only after it became apparent that the ring was evidence of a crime. Betterley does not dispute that at the time the New Richmond police removed the ring from Betterley's jail property box, the New Richmond police had probable cause to believe it was evidence of a crime.[1] Thus, under *Edwards*, the New

---

[1] Betterley asserts that the St. Croix County Sheriff's Department lacked probable cause to believe the ring was evidence of a crime at the time of the inventory search. Because the sheriff's department seized the ring from Betterley as part of a

Richmond police officer's subsequent seizure of the ring from Betterley's jail property box was reasonable. *See id.* at 807 n.7.

Betterley argues that *Edwards* is distinguishable and thus its result is not controlling. Betterley asserts that, in upholding the search and seizure, the *Edwards* Court emphasized the facts that Edwards' clothes were seized as part of the investigation of the crime for which he was in custody, the delay in seizing his clothes was unavoidable and Edwards' clothes were seized before "the normal processes incident to arrest . and custody" were completed. *Id.* at 804-06. Betterley argues that because these facts are not present here, *Edwards* is inapplicable. We conclude that the holding is not limited as Betterley suggests and that these distinctions do not render the principles of *Edwards* inapplicable.

The *Edwards* Court did not limit its holding to situations where police seized evidence related to the

---

lawful inventory search, which Betterley concedes, probable cause was not required. *See Edwards*, 415 U.S. at 804. Moreover, the issue here is whether the New Richmond police, not the sheriff's department, had probable cause to believe the ring was evidence of a crime at the time of the subsequent seizure. The United States Supreme Court has held that probable cause means "a fair probability that contraband or evidence of a crime will be found." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Here, Lundell knew that when Betterley was incarcerated, he possessed a ring similar to one Lundell had previously seen him wearing. Lundell also knew that Breault had sold Betterley a similar ring, and that the ring was unique and expensive. Finally, Lundell knew that Betterley had reported the Breault ring stolen and received payment from his insurance company. These facts are sufficient to give Lundell probable cause to believe that Betterley's jail property box probably contained evidence of a crime.

investigation of the crime for which the defendant is in custody. The Court stated its holding broadly:

> Indeed, it is difficult to perceive what is unreasonable about the police's examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest.
>
>     . . . .
>
> [O]nce the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other. This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the "property room" of the jail, and at a later time searched and taken for use at the subsequent criminal trial.

*Id.* at 806, 807. The Court did not limit its holding to situations where the property seized was evidence related to the crime for which the accused was in custody, delay in seizing the property was unavoidable and the "booking" process had not been completed. Rather, the Court explained why the delay of ten hours before Edwards' clothes were seized was reasonable and noted in response to the lower court's ruling that "it seems to us that the [booking process] . . . had not been completed when Edwards was placed in his cell . . . ." *Id.* at 804-05. We therefore conclude that the *Edwards* Court did not intend its holding to be so narrowly construed.

175

We recently reached the same result in *State v. Jones*, 181 Wis. 2d 194, 202, 510 N.W.2d 784, 787 (Ct. App. 1993). In *Jones*, we held "that a defendant under lawful arrest has a diminished privacy interest in his personal property that has been inventoried by jail authorities and that a warrantless police search of defendant's [inventoried] property when they have probable cause to believe that it may contain evidence of *any* crime does not violate defendant's rights guaranteed by U.S. Const. amend. IV and Wis. Const. art. I, sec. 11." *Jones*, 181 Wis. 2d at 202, 510 N.W.2d at 78 (emphasis added).

Additionally, other jurisdictions have construed *Edwards* as permitting a subsequent search and seizure of an arrestee's inventoried property for evidence of a crime other than the crime for which the arrestee was placed in custody. *See, e.g., United States v. Jenkins*, 496 F.2d 57 (2d Cir. 1974); *Ex Parte Hilley*, 484 So. 2d 485 (Ala. 1985); *State v. Gonzales*, 523 P.2d 66 (Ariz. 1974); *State v. Spells*, 218 N.W.2d 210 (S.D. 1974). This persuasive authority further supports our conclusion that the *Edwards* Court did not intend its holding to be so narrowly construed.

Betterley further contends that he "had a reasonable expectation that his property would be held only for the reasons which justified the seizure in the first place: to protect against its loss and to facilitate the safe maintenance of the jail." Because the New Richmond police officer's subsequent seizure of the ring from Betterley's jail property box was not in furtherance of those objectives, Betterley argues, his privacy interest in the property box was violated. Betterley contends: "Once the booking and inventorying process is completed, the justification for a warrantless search ceases to exist. A second intrusion must be pursuant to a warrant."

176

The *Edwards* Court recognized that the fourth amendment's proscription against unreasonable searches and seizures protects persons in lawful custody. *Id.* at 808. The Court also noted, however, that an arrestee's expectation of privacy in his effects that are also in lawful custody is limited: "While the legal arrest of a person should not destroy the privacy of his premises, it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape, *and evidence.*" *Id.* at 808-09 (emphasis added) (citation omitted). Betterley cites no legal authority, and we find none, to support the proposition that a warrantless search and seizure of property in a jail property box is unreasonable as a matter of law if the police have probable cause to believe that those effects are evidence of a crime.

Indeed, Betterley's argument is directly contrary to *Edwards*. As Professor William La Fave noted:

> [T]he [*Edwards*] majority's assumption appears to be that *at least* when (i) an object lawfully came into plain view at the time of a search upon the arrestee's arrival at the place of detention, (ii) later investigation establishes that this item is of evidentiary value, and (iii) the item remains in police custody as part of the arrestee's inventoried property, then it is permissible for the police, without a warrant, to retrieve that object and thereafter deal with it as an item of evidence.

2 La Fave SEARCH AND SEIZURE § 5.3(b) at 491 (1987) (emphasis in original) (footnotes omitted).

■

We therefore conclude that because the New Richmond police officer had probable cause to believe the ring was evidence of a crime at the time of its subse-

quent seizure from Betterley's jail property box, which was in lawful police custody, the search and seizure was constitutionally permissible. Because the ring was not obtained by state action violating Betterley's constitutional rights, Betterley is not entitled to suppression of the ring. *See State v. Verkuylen*, 120 Wis. 2d 59, 61, 352 N.W.2d 668, 669 (Ct. App. 1984).

## NEW TRIAL

Betterley also contends that the trial court erred by refusing to grant him a new trial in the interest of justice. Betterley argues that the real controversy was not fully tried because he was unable to produce the cheap ring he claims Strohbeen saw him wearing after he reported the theft of the Breault ring. Betterley asserts that the cheap ring was necessary to demonstrate that the Breault ring was not unique, casting doubt on Strohbeen's and Breault's identification of the ring seized from Betterley's jail property box as the Breault ring that he reported stolen. Betterley further asserts the cheap ring was necessary to counter the State's argument that Betterley lied to Strohbeen when he claimed the ring he was wearing was a cheap copy.

In exercising its broad discretion to reverse under § 752.35, STATS., because the real controversy was not fully tried, a court need not determine that there is a substantial probability of a different result upon retrial. *State v. Harp*, 161 Wis. 2d 773, 776-77, 469 N.W.2d 210, 212-13 (Ct. App. 1991). This discretion, however, should be exercised only in exceptional cases. *State v. Cuyler*, 110 Wis. 2d 133, 141, 327 N.W.2d 662, 667 (1983).

178

The real controversy in this case was whether the ring seized from Betterley's jail property box was the Breault ring, which Betterley had reported stolen and for which he received an insurance payment, or some other ring that simply looked like the Breault ring. The State argues that the existence of the cheap copy ring is irrelevant to this issue, and thus the real controversy was fully tried.

■

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Section 904.01, STATS. The existence of the cheap copy ring may be relevant to the issue whether the ring Strohbeen saw Betterley wearing shortly after he reported the Breault ring stolen was the Breault ring or some other ring. However, the existence of the cheap copy ring is not relevant to the issue whether the ring seized from Betterley's jail property box—admittedly not the cheap copy ring—was the Breault ring or some other ring. Producing the cheap copy ring would not make it any more or less probable that the ring seized from Betterley's jail property box was the Breault ring. Because the existence of the cheap copy ring is irrelevant to the critical issue in the case, we conclude that its absence at trial did not prevent the real controversy from being fully tried. We therefore conclude that the trial court properly exercised its discretion by refusing to grant Betterley a new trial in the interest of justice.

*By the Court.*—Judgment and order affirmed.