STATE of Wisconsin, Plaintiff-Respondent,

v.

Jody E. BETTERLEY, Defendant-Appellant-Petitioner.

Supreme Court

*No. 93–1979–CR. Oral argument January 11, 1995.—Decided March 21, 1995.*

(Also reported in 529 N.W.2d 216.)

407

For the defendant-appellant-petitioner there were briefs and oral argument by *Margaret A. Maroney,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Paul Lundsten,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

DAY, J.    This is a review of a decision of the court of appeals that affirmed a judgment of conviction and order denying postconviction relief of the circuit court for St. Croix County, Honorable Conrad A. Richards, Judge.[1] On April 23, 1992, a jury convicted Mr. Jody E. Betterley for felony theft arising out of insurance fraud in violation of sec. 943.20(1)(d), Stats.,[2] and obstructing an officer in violation of sec. 946.41, Stats.[3]

---

[1] *State v. Betterley,* 183 Wis. 2d 165, 515 N.W.2d 911 (Ct. App. 1994).

[2] Section 943.20(1)(d), Stats. (1991–92), provides in part:

**943.20  Theft. (1)**  ACTS. Whoever does any of the following may be penalized as provided in sub. (3): . . . (d) Obtains title to property of another by intentionally deceiving him with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made.
. . .

[3] Section 946.41(1), Stats. (1991–92), provides:

**946.41  Resisting or obstructing officer. (1)**  Whoever knowingly resists or obstructs an officer while such officer is

411

Both charges stemmed from Betterley falsely reporting that a ring was stolen during a burglary of his home in July 1990 and collecting insurance for the purported loss. A key piece of evidence at trial was a ring police took from a property box containing Mr. Betterley's possessions at the St. Croix County Jail where he had been held for investigation of an alleged probation violation. Betterley argues the trial court erred in failing to suppress the use of the ring as evidence, and, in the alternative, that a new trial was necessary in the interest of justice.

We hold that the police did not violate Mr. Betterley's Fourth Amendment right to be free from unreasonable searches and seizures by removing the ring from the property box. We also hold that Betterley is not entitled to a new trial in the interest of justice. We therefore affirm the decision of the court of appeals.

In July 1990, Betterley reported that several items were stolen from his apartment, including a fairly unusual fourteen carat gold ring with Teflon inlays on both sides and a .24 carat diamond center that he had purchased from Breault Jewelers for $738.45 (Breault Ring). The Rural Insurance Companies of Madison, Wisconsin paid Betterley $2,688.50 for losses Betterley claimed he sustained in the burglary. This claim was the basis for the charges against Betterley.

Betterley's defense at trial was that the ring police took from his property box at the St. Croix County Jail was not the Breault Ring, but instead was a ring his father had given to him. This was contradicted by Betterley's mother who said that she had never seen Betterley's father wearing a ring similar to the one in question, that she had never known him to own such a

doing any act in an official capacity and with lawful authority, is guilty of a Class A misdemeanor.

412

ring and that Betterley had not told her that his father gave him a ring. It was also contradicted by Mr. Breault, the owner of Breault Jewelers. He testified that he was able to identify the ring because it was the same width, cut, clarity, color, and ring size and had the same uncommon manufacturer's stamps as the Breault Ring.

Ms. Cindy Strohbeen, who sold the Breault Ring to Betterley, also testified. She stated that about one month after Betterley reported the Breault Ring stolen, she saw Betterley at a gas station wearing a ring she believed to be the one she had sold him. When she commented, "nice ring," Betterley replied that it was a cheap imitation that he had made in the Twin Cities.

The defense countered with testimony from Mr. James Garnett. He claimed that he bought a ring in February 1990 from Betterley that looked like the Breault Ring and that Betterley said was his father's. He further testified that at the end of June 1990, Betterley bought the ring back while wearing a third ring that looked like both the Breault Ring and Betterley's father's ring.

Based on this testimony, the jury found Betterley guilty of felony theft arising out of insurance fraud and obstructing an officer. Following Betterley's conviction, Attorney William Schembera testified that the defense had intended to use the cheap imitation ring Betterley claimed he was wearing at the gas station when he met Ms. Strohbeen. The purpose of introducing the ring would have been to impeach Ms. Strohbeen's testimony and to corroborate Mr. Garnett's testimony. Betterley could not bring the ring because it was in the possession of the Dunn County Sheriff's Department who had seized it when they arrested Betterley the day before trial. Betterley argued that this prevented the true

413

controversy from being tried and necessitated a new trial in the interest of justice.

Betterley also argued that the trial court erred in refusing to suppress the ring taken from the property box based on the following material facts. On April 15, 1991, Officer Chris Lundell (Lundell) of the New Richmond Police Department met with Betterley on an unrelated matter and noticed a ring on Betterley's hand that looked like one Lundell had seen at Breault Jewelers. The next day Lundell spoke to Mr. Breault who told him that Betterley had bought a ring from Breault Jewelers and that Betterley had later told him that the ring was stolen. Mr. Breault also showed Lundell a ring nearly identical to the ring Betterley bought. Lundell then went to the police department and pulled the police report on the July 1990 burglary. The report contained a photograph of the ring Betterley reported stolen. Lundell noticed that the ring in the photograph was "very, very similar, if not exact[ly]" the same as the ring he had seen Betterley wearing.

Betterley was on probation at the time, so Lundell told Mr. Tom Petta, Betterley's probation officer, about the possibility that Betterley had defrauded the insurance company. Mr. Petta told Lundell that the alleged fraud occurred before Betterley was on probation, but said that Lundell should "[g]o ahead and investigate it." Mr. Petta also told Lundell that he was placing a probation hold on Betterley and that the police should pick him up if they saw him. The explanation for the probation hold was that Betterley, although he did not have a job, had purchased a car without telling Mr. Petta.

At 2:00 a.m. on April 18, 1991, Betterley was taken into custody and detained at the St. Croix County Jail on the probation hold and an inventory search was

414

made. A ring was found in Betterley's pants pocket and placed in a jail property box. Betterley does not argue that this search and seizure violated his Fourth Amendment rights.

Later that day, Lundell learned that Betterley was in jail and that a county jailer had discovered a ring during an inventory search. Lundell asked the sheriff's department to release the ring. At 10:00 a.m., New Richmond Police Officer Jarchow removed the ring from the property box without a warrant and delivered it to Lundell. The ring was retained as evidence. Lundell later showed the ring to Mr. Breault, who on May 13, 1991, identified it as the ring he had sold Betterley.

## SEARCH AND SEIZURE OF THE RING

Both the Fourth Amendment to the United States Constitution and Article I, section 11 of the Wisconsin Constitution guarantee citizens the right to be free from "unreasonable searches."[4] When the material

---

[4] The Fourth Amendment to the Constitution of the United States provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized.

Article I, section 11 of the Wisconsin Constitution provides:

> **Searches and seizures.** SECTION 11 The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

415

facts are not in dispute, the question of whether police conducted an unreasonable search is a question of law that this Court reviews without deference to the trial court or the court of appeals. *State v. Tompkins,* 144 Wis. 2d 116, 121–22, 423 N.W.2d 823 (1988).

In construing Article I, section 11 of the Wisconsin Constitution, this Court consistently follows the United States Supreme Court's interpretation of the Fourth Amendment. *State v. Bohling,* 173 Wis. 2d 529, 536–37 n.7, 494 N.W.2d 399 (1993). Here the United States Supreme Court case that most closely addressed the relevant issues is *United States v. Edwards,* 415 U.S. 800 (1974).

In that case, Edwards was arrested and placed in police custody at about 11:00 p.m. on a charge of attempting to break into a post office. Investigation done at the scene about the time of Edwards' arrest revealed that the perpetrator probably had paint chips on his clothes. The next morning, police took Edwards' clothes and found paint chips on them which were later admitted as evidence. *Id.* at 801–02. The United States Supreme Court upheld the trial court's decision to allow the evidence, stating that:

> once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other.

*Id.* at 807.

*Edwards* leaves open three questions that we must answer to decide this case. First, when may police officers examine the effects of a person lawfully in custody that have previously been searched ("second look") without first obtaining a warrant. Second, to what extent may the effects be examined during the second look without first obtaining a warrant. Third, does an officer need to have probable cause to believe that evidence of a crime will be discovered before taking a second look.

As to the timing and extent of the second look, the *Edwards* court stated:

> While the legal arrest of a person should not destroy the privacy of his premises, it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest . . . .

*Edwards,* 415 U.S. at 808–09. However, *Edwards* does not definitively answer the question of what is reasonable.

Several cases have ruled on the permissible extent of the second look. We find the following reasoning persuasive. "Requiring police to procure a warrant for subsequent searches of an item already lawfully searched would in no way provide additional protection for an individual's legitimate privacy interests. The contents of an item previously searched are simply no longer private." *United States v. Burnette,* 698 F.2d 1038, 1049 (9th Cir.), *cert. denied,* 461 U.S. 936 (1983); *see also People v. Rivard,* 59 Mich. App. 530, 533–34, 230 N.W.2d 6 (1975) ("Once the ring had been exposed to police view under unobjectionable circumstances and lawfully taken by the police for safekeeping, any expectation of privacy with respect to that item had at

least partially dissipated so that no reasonable expectation of privacy was breached by . . . taking a 'second look.' "); *State v. Jones,* 181 Wis. 2d 194, 202, 510 N.W.2d 784 (Ct. App. 1993).

The diminished expectation of privacy defines the permissible extent of the second look. That diminished expectation is caused by the prior unobjectionable exposure of the item to police. Thus, we hold that the permissible extent of the second look is defined by what the police could have lawfully done without violating the defendant's reasonable expectations of privacy during the first search, even if they did not do it at that time. As the United States Supreme Court stated in *Edwards,* a search of an item is permissible if "[t]he police did no more . . . than they were entitled to do incident to the usual custodial arrest and incarceration." *Edwards,* 415 U.S. at 805.

Here, between the time that Betterley was taken into custody and detained and the time the ring was retained as evidence, Lundell did no more than look at the ring. This was exactly the extent of the original inventory search and clearly was no more intrusive of what remained of Betterley's privacy interest in the ring than the initial look at the ring. Thus, the extent of the second look was reasonable.[5]

---

[5] As the United States Supreme Court did in *Edwards,* we note that "[h]olding the Warrant Clause inapplicable in the circumstances present here does not leave law enforcement officials subject to no restraints. This type of police conduct 'must [still] be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures.' " *Edwards,* 415 U.S. at 808 n.9 *(quoting Terry v. Ohio,* 392 U.S. 1, 20 (1968)). We have "no occasion to express a view concerning

In answering the question of the permissible extent of the second look, we also answer the question of whether the police need probable cause before taking a second look at the inventoried property. Because the permissible extent of a second look is defined by the initial look, where the initial look does not require probable cause, we hold that police do not need probable cause for a second look. The initial look here did not require probable cause, therefore the police did not need probable cause for the second look.

Betterley notes that some courts have held that probable cause is required where the second look revealed evidence unrelated to the crime for which the defendant had been arrested. *See State v. Simpson*, 95 Wash. 2d 170, 187 n.5 (1980). However, the vast majority of courts that have considered the issue have assumed, as we expressly hold here, that probable cause is not required for a second look. *See* 2 Wayne R. LaFave, *Search and Seizure*, sec. 5.3(b) at 494–95 n.79 (2d ed. 1987 & Supp. 1995). We agree with those courts that have stated that a second look at items previously exposed to police view does not breach any reasonable expectation of privacy. *See Id.* at 495.

As to the timing of the second look, the *Edwards* court stated that items can be lawfully searched and seized without a warrant:

> where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's

those circumstances surrounding custodial searches incident to incarceration which might 'violate the dictates of reason either because of their number or their manner of perpetration.' " *Id.* (citations omitted).

name in the "property room" of the jail, and at a later time searched and taken for use at the subsequent criminal trial.

*Edwards,* 415 U.S. at 807. Thus, we hold that a "reasonable time" is as long as the possessions of the defendant would normally be held by the police. Here, the second look occurred within hours after Betterley was taken into custody. The timing was reasonable.

Betterley argues that the *Edwards* decision and the cases interpreting that decision are not applicable to this case because Betterley was not arrested, but rather was only picked up for a probation hold. Betterley contends that this distinction takes the inventory search outside the "search incident to arrest" exception to the warrant requirement relied upon by the United States Supreme Court as the justification for the search and seizure in *Edwards.*

However, we conclude that Betterley had no greater "reasonable expectation of privacy" after being taken into custody and detained on a probation hold than does a person who has been arrested; thus, the reasoning of *Edwards* applies. In *State v. Griffin,* 131 Wis. 2d 41, 388 N.W.2d 535 (1986), *aff'd sub nom. Griffin v. Wisconsin,* 483 U.S. 868 (1987), this Court held that "by its nature probation places limitations on the liberty and privacy rights of probationers, and these limitations justify an exception to the warrant requirement." *Id.* at 45–46.

In *Griffin v. Wisconsin,* 483 U.S. at 875–76, the United States Supreme Court affirmed, holding that the "special needs" of the Wisconsin probation system provided an exception to the warrant requirement under some circumstances. In reaching its decision, the Court placed emphasis on the fact that the search was made pursuant to a Wisconsin Administrative Code

420

home search rule. *Id.* at 870–71. The Court noted that probationers do not enjoy the absolute liberty to which every citizen is entitled, but only conditional liberty properly dependent on observance of special probation restrictions. *Id.* at 874. Further, the Court stated that the need to supervise probationers to assure observance of probation restrictions permits a degree of impingement upon privacy that would not be constitutional if applied to the public at large. *Id.* at 875.

Here, as in *Griffin,* relevant Wisconsin Administrative Code provisions exist. The Code states that it is permissible to take a probationer into custody "for investigation of an alleged violation." Wis. Admin. Code DOC 328.22(2)(a).[6] Thus, given the special governmental need for supervision, a probationer may be taken into custody pursuant to Wis. Admin. Code DOC 328.22(2)(a) with less information than is constitutionally required for an arrest. Further, the Code authorizes a probation officer to search a probationer who has been taken into custody. Wis. Admin. Code DOC 328.21(2)(b)4.[7] Finally, the Code states that probation agents should rely on law enforcement

---

[6] Wisconsin Administrative Code DOC 328.22(2)(a) provides:

> **DOC 328.22 Custody and detention. . . . (2)** A client may be taken into custody and detained: (a) For investigation of an alleged violation by the client;

[7] Wisconsin Administrative Code DOC 328.21(2)(b)4 provides:

> **DOC 328.21 Search and seizure. . . . (2)** PERSONAL SEARCH. . . . (b) A personal search of a client may be conducted by any field staff member: . . . 4. When a client is taken into custody.

authorities to take a probationer into custody. Wis. Admin. Code DOC 328.22.[8]

Although a search of a probationer may be done with less evidence of an alleged violation than is required to make an arrest, the search seems to serve the same purposes as a search incident to arrest. Both provide assurance that the probationer does not possess weapons and allow a search for contraband and evidence. *See* LaFave, *supra,* at secs. 5.2(c)–(d). Further, since a probation officer is entitled to search a probationer who is in custody, and probation officers are directed to rely on law enforcement officers to take a probationer into custody, we conclude that law enforcement officers may search a probationer when they have been asked by a probation officer to take the probationer into custody.[9] Thus, we conclude the special need for supervision of probationers, under these facts, justifies an exception to the warrant requirement that permits warrantless police searches of a probationer which are at least as extensive and require no

---

[8] Wisconsin Administrative Code DOC 328.22 provides:

**DOC 328.22 Custody and detention.** Whenever feasible, staff shall rely on law enforcement authorities to take a client into custody.

[9] Although we agree with the dissent that the search was proper as an inventory search, *Warrix v. State,* 50 Wis. 2d 368, 376, 184 N.W.2d 189 (1971), the search was also proper because Betterley was taken into custody and detained for investigation of an alleged probation violation. We conclude that a search after a probationer is taken into custody and detained is analogous to, and can be as broad in scope as, a search performed of a person incident to an arrest.

more cause than is required for searches justified by the search incident to arrest exception.[10]

The question still remains under what circumstances the police, having lawfully searched the item, may seize it. A seizure of property "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.' " *Soldal v. Cook County, Ill.,* 113 S. Ct 538, 543 (1992) *(quoting United States v. Jacobsen,* 466 U.S. 109, 113 (1984)). It is undisputed that the seizure of Betterley's ring when he was taken into custody and detained on a probation hold was lawful. Therefore, we conclude there was no interference with Betterley's possessory interests, and so no seizure, until the ring was retained after the rest of Betterley's property was returned, presumably upon his release.[11]

---

[10] This should not be interpreted as permitting police to search probationers whenever a probation agent could search that person. *See Griffin,* 131 Wis. 2d at 56–57. Only the fact that Wisconsin Administrative Code directed the probation agent to ask the police to take Betterley into custody justified the police making the search instead of the probation officer in this case.

[11] The dissent states that Betterley had a possessory interest and expectation of privacy in the ring because he could have asked that his property be released to a friend or relative, and thus taking the ring from the property box was a seizure. He did not make such a request. Moreover, for a seizure to occur there must be more than a possessory interest, there must be a meaningful interference with that interest. Even if Betterley had some possessory interest in the ring, moving it was not a meaningful interference with that interest. Betterley did not have a reasonable expectation of privacy since the ring was already in police custody.

A seizure of an object lawfully encountered is permissible only where the police have probable cause to believe the object is evidence of criminal activity. *Id.* at 546. By the time of the seizure, although the ring had not yet been positively identified as the ring Betterley had reported stolen, Lundell had seen the ring on Betterley's hand and knew that Betterley had reported a ring stolen. Further, Lundell determined that the fairly unusual ring was "very, very similar" to the ring reported stolen based on his comparison to both the photograph in the police report and the nearly identical ring he was shown by Mr. Breault at the jewelry store. Thus, we find that the seizure was permissible because Lundell had probable cause to believe it was evidence of a crime.

## NEW TRIAL IN THE INTEREST OF JUSTICE

Betterley's second claim is that he is entitled to a new trial in the interest of justice because "the real controversy was not fully and fairly tried" due to Betterley's inability to produce a cheap imitation ring that was being held by the Dunn County Sheriff's Department. At the court of appeals level, this claim was governed by Section 752.35, Stats. (1991–92).[12] Under that statute, the court of appeals may, in its discretion,

---

[12] Section 752.35, Stats. (1991–92), provides in part:

**752.35 Discretionary reversal.** In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial . . ..

reverse the judgment of the trial court if the real controversy was not fully tried, even though it is not probable that the result would be any different at a new trial. *Vollmer v. Luety,* 156 Wis. 2d 1, 19, 456 N.W.2d 797 (1990).

"This court will ordinarily refrain from reviewing a discretionary determination of the court of appeals." *State v. Johnson,* 149 Wis. 2d 418, 428, 439 N.W.2d 122 (1989). When this Court does review a court of appeals decision to grant or deny a new trial in the interest of justice, we apply the following standard:

> Whether or not we would have agreed with the decision of the court, we will uphold the discretion of a court we are reviewing if the decision made on appropriate facts and the correct law is one which a court reasonably could have reached.

*Id.* at 429 *(quoting State v. McConnohie,* 113 Wis. 2d 362, 369, 334 N.W.2d 903 (1983); *State v. D'Acquisto,* 124 Wis. 2d 758, 762, 370 N.W.2d 781 (1985). This deferential standard was early recognized by this Court in *McConnohie,* where then Justice Heffernan wrote, "this court ordinarily will refrain from reviewing court of appeals decisions made in the interest of justice, for there is no assumption by this court that its determinations are necessarily more just than those of a court of appeals." *McConnohie,* 113 Wis. 2d at 368; *see also Vollmer,* 156 Wis. 2d at 14 (by same author).

Here, the court of appeals determined, based on the same facts we have before us, that the real controversy was whether the ring seized from Betterley's jail property box was the Breault Ring, which Betterley had reported stolen, or some other ring that simply looked like the Breault Ring. It also stated that

425

"[p]roducing the cheap copy ring would not make it any more or less probable that the ring seized from Betterley's jail property box was the Breault ring." *Betterley,* 183 Wis. 2d at 179. The court of appeals concluded that the "absence [of the cheap copy ring] at trial did not prevent the real controversy from being fully tried." *Id.* We conclude that the court of appeals' decisions on these issues were reasonable. We therefore affirm the court of appeals' decision to deny Betterley's request for a new trial in the interest of justice.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* When the defendant was jailed for violating conditions of probation (for failing to advise the probation officer of his purchase of a car), the police properly searched him incident to booking him into jail. The police took the defendant's personal belongings, inventoried them and placed them in a property box. This search and seizure of the defendant's property was for limited purposes: to verify his identity, to protect his property, to protect others against any contraband, weapons or means of escape he may have had, and to protect the police officers from groundless accusations that they may have lost or destroyed property taken for safekeeping.[1] "If contraband or fruits of a crime [had been] found in this process, the discovery [would] not [have made] the search unreasonable." *Warrix v. State,* 50 Wis. 2d 368, 376, 184 N.W.2d 189 (1971).

In this case, however, a second search and seizure occurred. This search and seizure of the property in the

---

[1] Wayne R. LaFave, 2 Search and Seizure sec. 5.3(a), at 481 (1987).

property box was done for a purpose unrelated to the property's safekeeping, unrelated to the reason for the probation detention,[2] and unrelated to weapons, contraband or means of escape.

For this "second look" and seizure, the majority does not require the police to obtain a search warrant. Nor does the majority require the police, at the time of the second look, to have probable cause to arrest Betterley for felony theft in order to search the box for evidence related to that charge.[3]

---

[2] *See State v. Jones,* 181 Wis. 2d 194, 510 N.W.2d 784 (Ct. App. 1993) (probable cause arrest; validated examination of inventoried property for evidence of crime leading to arrest).

A number of the cases allowing a second look without a search warrant involve examining the contents of the property box for evidence of the crime for which the arrest was made.

[3] There is no evidence that police had probable cause to arrest Betterley for felonious theft; thus the search of his property box for evidence relating to felony theft was not justified as a search that could have been incident to an arrest for that charge.

Professor LaFave comments as follows about the relationship between the search and the offense for which the arrest was made:

> "It may be that the argument for requiring probable cause is greater when the purpose of the search is to find evidence relating to a crime other than that for which the person is in custody . . . . [P]ermitting a detailed post-booking search through the arrestee's effects to see if he can be linked with some other offense bestows upon the police an undeserved windfall and provides them with a temptation to make subterfuge arrests . . . . On the other hand, if a defendant is in custody for offense A and there later develops probable cause to arrest him for offense B, it might well be concluded that a re-examination of all his property held by the police and subject to search at the time of his original arrest, to see if any of it is or contains evidence of offense B, is justified, as otherwise the defendant would receive greater protection than had he not been in

The majority further concludes that the ring was not actually "seized" when it was first removed from the box, because the removal did not interfere with Betterley's possessory interests. Majority op. at 424. The "seizure" occurred, according to the majority opinion, when the ring was retained after the remainder of Betterley's property was returned to him, "presumably upon his release." Majority op. at 424.)

The majority opinion relies on *United States v. Edwards,* 415 U.S. 800 (1974). However, *Edwards* is inapposite. In that case, unlike this one, the Court justified the warrantless search by the exception to the warrant requirement for searches incident to arrest. In this case the evidence seized had nothing to do with the probation hold.[4]

The majority's conclusion reflects a misconception of a detainee's interest in the contents of a property box. Although the police have examined and seized a detainee's personal effects, a person detained in county jail maintains title to and some control over these

---

custody and was just now being arrested for offense *B.* " Wayne R. LaFave, 2 Search and Seizure sec. 5.3(b) at 496–97 (1987).

[4] The *Edwards* Court cautioned that it was not concluding that "the Warrant Clause of the Fourth Amendment is never applicable to postarrest seizures of the effects of an arrestee." The Court was very careful to explain that " 'while the legal arrest of a person should not destroy [his] privacy . . ., it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest *in weapons, means of escape and evidence.*' " *Edwards,* 415 U.S. at 808–09, quoting *United States v. DeLeo,* 422 F.2d 487, 493 (1970). (emphasis added.).

The majority op. accepts that the *Edwards* court limited its decision, but any limitation in the majority decision is difficult to detect.

items. Ordinarily, persons detained in jail may obtain the release of the contents of their property boxes to friends or relatives by signing a property release form.[5] Thus, I conclude that a person in jail has some possessory interest and expectation of privacy in personal effects in a property box.

Because Betterley had a possessory and privacy interest in the contents of his property box, the removal of his ring was a seizure, despite the majority's conclusion to the contrary. This seizure was not supported by probable cause. Officer Lundell, without having seen the ring, requested that it be delivered to him. Another officer removed Betterley's ring from the property box during Betterley's detention and took it from the jail in Hudson to officer Lundell in New Richmond.

Warrantless searches and seizures are "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). *See also Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1974). The state has not met its burden of showing that the circumstances of this search and seizure brought it within one of the "jealously and carefully drawn" exceptions to the requirement that law enforcement officers obtain search warrants. *Jones v. United States*, 357 U.S. 493, 499 (1958).

The police had ample time to seek a warrant; no exigent circumstances excused their failure to do so. No other exception to the warrant requirement justified the search or seizure. Thus the majority creates an exception to the rule "that the police must, whenever practicable, obtain advance judicial approval of

---

[5] *See, e.g.,* Dane County Sheriff Department, Security Services Manual, p. 1, sec. 605–1 (Jan. 1, 1992), in Dane County Law Library (Madison, Wis.).

searches and seizures through the warrant procedure." *Terry v. Ohio,* 392 U.S. 1, 20 (1968).

The intrusion on the Warrant Clause of the Fourth Amendment authorized by the majority in this case is not shocking, massive or flagrant. Nevertheless it is an intrusion, and as the United States Supreme Court has warned, the Fourth Amendment protects against the gradual erosion of rights. *Boyd v. United States,* 116 U.S. 616, 635 (1886).[6]

For the reasons set forth, I conclude that the search of the property box and the seizure of the ring without a warrant were, under the circumstances of this case, in violation of sec. 968.10, Stats. 1991–92, Art. I, sec. 11, Wis. Const., and the Fourth and Fourteenth Amendments to the federal Constitution.

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN and Justice WILLIAM A. BABLITCH join this dissent.

---

[6] The words of Justice Thomas of the Wyoming Supreme Court should be heeded: "Perhaps my concern is ultra cautious, but I am convinced that law enforcement officers and prosecutors should not casually rely on this case [upholding warrantless searches of a prisoner's property secured in a jail property box] . . .. I suggest that prosecuting attorneys should always obtain a warrant to seize property of prisoners that they propose to use as evidence, even though it is already in the custody of the law enforcement officers, because of the prisoner's incarceration. It seems to me this is a relatively simple and easy way to avoid what otherwise might be a very troublesome controversy." *Marquez v. State,* 754 P.2d 705, 709 (Wyo. 1988) (Thomas, J. concurring).