STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Rollin Lloyd McCONNOHIE, Defendant-Appellant.

Supreme Court

*No. 81–1834–CR. Argued April 28, 1983.—Decided July 1, 1983.*

(Also reported in 334 N.W.2d 903.)

For the petitioner the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general .

For the defendant-appellant there was a brief by *James A. Walrath* and *Shellow, Shellow & Glynn, S.C.,* Milwaukee, and oral argument by *Mr. Walrath.*

HEFFERNAN, J.   This is a review of an unpublished decision of the court of appeals dated October 19, 1982, which reversed the order of the circuit court for Milwaukee county, JOHN F. FOLEY, Judge, denying Rollin Lloyd McConnohie's post-conviction motions for a new trial. The court of appeals, in reversing the circuit court, based its order on sec. 752.35, Stats., discretionary reversal in the interest of justice.[1] We reverse and remand

---

[1] "752.35 **Discretionary reversal.** In an appeal to the court of appeals, if it appears from the record that the real controversy has

to the court of appeals with directions that it consider the issues on appeal that it deemed unnecessary to consider when it based its decision solely on sec. 752.35.

McConnohie, after a trial to a jury, was convicted as a party to the crime of armed robbery. The robbery was of a gas station attendant, who identified McConnohie and Charles H. LaFrance as the two individuals who committed the robbery. The attendant testified that he approached a vehicle which had driven up to the apron of a Clark Oil Company service station, when the passenger, whom he identified as McConnohie, pulled a gun and told the attendant to give him his money or he would shoot. The attendant handed over his money, and the robbers drove away. The attendant stated he had a full and unobstructed view of the passenger's face for a period of about five seconds. The record demonstrates that the attendant identified McConnohie in a lineup held about five days after the robbery, and he also identified McConnohie during trial.

LaFrance was identified as the driver of the car; and at the time of trial, LaFrance had entered a plea of no contest to a charge of armed robbery as part of a plea bargain.

At trial McConnohie presented a two-pronged defense. First, he relied on the alibi that he and Jay Goldman were at a Milwaukee residence at the time of the offense. Second, McConnohie attempted to show that Jay Serio was LaFrance's partner in the armed robbery. McConnohie testified that he and Goldman had been together during

not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice."

the day and that he and Goldman met LaFrance and Serio after the time of the robbery and that LaFrance had told Goldman and McConnohie that they had just robbed a gas station.

Goldman's testimony at trial corroborated McConnohie's testimony with respect to the meeting with La France and Serio. Goldman testified that LaFrance and Serio stated that they had "just [pulled] a job." Goldman also testified that, during the conversation, Serio pulled a gun out of his pocket and waved it around and said that it was a toy gun that had been modiifed so it would appear real.

There was impeachment of Goldman by the testimony of a Milwaukee police detective. According to the detective, Goldman gave a statement shortly after the robbery; and although Goldman, in that earlier statement, said he was with McConnohie and that the two of them had been at McConnohie's house until long after the robbery, Goldman had said nothing about any meeting with LaFrance or Serio.

There was also testimony by the filling station attendant that, although Serio was in the lineup with McConnohie and LaFrance, the attendant did not identify Serio as being a participant in the robbery. The trial court in chambers specifically asked defense counsel whether Serio would be called as a witness. Defense counsel stated he would not be, although the record shows that Serio was, at the time, in custody and could have been physically produced at the trial.

LaFrance was called as a witness; and although he had previously pleaded no contest, he invoked his right under the fifth amendment not to testify. The trial judge on that basis excused him from testifying.

In closing argument, defense counsel's principal position was that Serio, and not McConnohie, was the person with LaFrance at the time of the robbery.

Approximately six months after the conviction, McConnohie's counsel, a different attorney than the one who represented him at trial, secured affidavits from Charles LaFrance and Jay Serio, both of which exonerated McConnohie. According to Serio's affidavit, on September 28, 1980, the day of the robbery, he took his brother's pellet gun, and he and LaFrance filed it down to make it look like a real gun. He deposed that, on the way to Jepp's Tavern to meet Goldman and McConnohie, he and La France stopped at the filling station, and that he pulled out the gun and told the attendant to give him money or he would shoot. At the time the affidavit was given, Serio was in prison at the Green Bay Reformatory.

LaFrance's affidavit was also obtained at the prison at Green Bay. It states that Jay Goldman telephoned him at about 8 p.m. on the day of the robbery. It was agreed that he and Serio were to meet McConnohie and Goldman at Jepp's Tavern. On the way to the tavern, he and Serio stopped at the gas station. Serio was in the passenger seat, and Serio pulled a gun on the attendant and told him to hand over his money. They then drove away and met McConnohie and Goldman at Jepp's Tavern.

In their affidavits, both Serio and LaFrance state that they met Goldman and McConnohie at Jepp's, and the affidavits substantially corroborate the testimony of Goldman and McConnohie.

The affidavits were presented to Judge John F. Foley, who presided at the postconviction hearing although he was not the trial judge. Judge Foley specifically rejected the argument that McConnohie should be granted a new trial in the interest of justice. He stated:

"With regard to the new—to the new material submitted, the—we have the two affidavits here that were submitted on September 1st, the Court must find, one, that it's very realistic to reflect that—that the non-appearance of these gentlemen was a tactical maneuver on

the part of defense counsel. They were present, we have not—not gotten to the point in time, gentlemen, where we conduct trial by affidavit. You never were able to cross examine an affidavit. This testimony was present and for some reason, I'm not going to speculate, I don't have a crystal ball, the defense counsel did not choose to present that testimony on the record and this Court finds that there is no basis for any post-judgment relief predicated upon—upon that—this statement in the defendant's affidavit."

The postconviction court specifically addressed the question of reversal in the interest of justice and denied a reversal on that basis or on any other of the grounds asserted by the defendant at the postconviction hearing. The court of appeals based its decision solely on the interest of justice, because it was persuaded that justice had probably miscarried and that the defendant would not have been found guilty if the testimony of Serio was placed before the jury.[2] It is not apparent from the record that the court of appeals even recognized that the trial court had addressed the question of reversal in the interest of justice and had specifically found that no new trial was warranted on that basis. The court of appeals, its decision demonstrates, addressed reversal in the interest of justice as an *ab initio* exercise of discretion. It stated:

"[T]he major fact in dispute at trial was the identification of the defendant and the major issue was the credibility of the witnesses. The testimony of Serio is highly significant and would very probably have changed the jury's determination of these issues."

[2] The court of appeals did not appear to give any weight to the affidavit of LaFrance, which was almost identical to Serio's. However, LaFrance had already pleaded no contest to the charge of committing this very crime, while Serio had not, so far as the record shows, ever been charged.

The court of appeals stated that it was not clear from the record that trial counsel's failure to call Serio was an intentional strategic maneuver.

The parties agree that, where an appellate court elects to review a decision made in the interest of justice, the reviewing court must determine the propriety of that original decision on the basis of whether there had been an abuse of discretion. Where a trial court grants a motion for a new trial in the interest of justice, an appellate court should only reverse if the trial court abused its discretion. *State v. Mills*, 62 Wis. 2d 186, 189, 214 N.W.2d 456 (1974).

This court has stated that it will not ordinarily review a court of appeals decision in a criminal case where only the question of the proper exercise of a trial court's discretion was before the court of appeals. *State v. Outlaw*, 108 Wis. 2d 112, 120, 321 N.W.2d 145 (1982). Moreover, subsequent to reorganization of the Wisconsin court system in 1978, the question of whether justice has been done in an individual case is primarily and initially the concern of the court of appeals. A.B.A. *Standards Relating to Appellate Courts* sec. 3.00, commentary at 4 (1977). While the lack of justice or an erroneous result may trigger a review in this court, it is the general position of this court, pursuant to the standards adopted for reviewing cases (sec. 809.62, Stats.) that this court will not ordinarily review discretionary determinations by the court of appeals where that determination has not, arguably at least, been based on an error of law. Particularly, this court ordinarily will refrain from reviewing court of appeals decisions made in the interest of justice, for there is no assumption by this court that its determinations are necessarily more just than those of a court of appeals. Although we emphasize that this court can never overlook its obligation to the justice

function of the court system, under the constitutional reorganization of the courts in 1978, it has a primary duty to assure that the law is followed by all the courts in the hierarchy of the system and that the law be uniform throughout the state.

Our reluctance to interfere with the discretion of the court of appeals is demonstrated by our consistent position that, where the court of appeals has exercised its discretion not to review a nonfinal order submitted to it, we will not review that court of appeals determination. We stated in *Aparacor, Inc. v. ILHR Department*, 97 Wis. 2d 399, 404, 293 N.W.2d 545 (1980) :

"Where the court of appeals grants permission to appeal, this court will not, case by case, review the court of appeals' exercise of discretion. . . . A contrary practice would divest the court of appeals of the discretion entrusted to it by sec. 808.03 (2) ."

Thus, we have stated that we will not review a decision of the court of appeals either to grant leave to appeal a nonfinal order or to review a refusal to grant leave to appeal a nonfinal order. Nor will we permit parties to bypass the court of appeals where a review is sought of a nonfinal order. *See, In the Interest of J.S.R.*, 111 Wis. 2d 261, 330 N.W.2d 217 (1983).

Accordingly, the general posture of this court in declining to review any discretionary order of the court of appeals when it is based upon a proper view of the law has been consistently adhered to. While this court has the authority to review any final decision of the court of appeals, as a matter of sound court administration comporting with the purposes of court reorganization, we will ordinarily refrain from reviewing a discretionary determination of the court of appeals. In respect to the specific discretionary determination—of revers-

ing a trial court judgment in the interest of justice—this court has the inherent authority to grant new trials in the interest of justice and also express statutory authority under sec. 751.06, Stats. Ordinarily, however, this court's discretion is not exercised under sec. 751.06 where either the trial court or the court of appeals has first exercised its discretion to grant a new trial. If either of those courts have indeed exercised discretion under the statutes, reversing a judgment in the interest of justice, this court if it is to review at all must review the determination as it would review any other exercise of discretion. We have frequently said, see *e.g., McCleary v. State,* 49 Wis. 2d 263, 182 N.W.2d 512 (1971), that, whether or not we would have agreed with the decision of the court, we will uphold the discretion of a court we are reviewing if the decision made on appropriate facts and the correct law is one which a court reasonably could have reached.

The concept of discretion is a review-constraining concept. In that sense:

"[T]o be invested with discretion means that the trial judge has what might be termed a limited right to be wrong in the view of the appellate court, without incurring reversal." M. Rosenberg. *Appellate Review of Trial Court Discretion,* 79 FRD 173, 176 (1979).

Thus, where either a court of appeals or a trial court in the appropriate exercise of its discretion, grants a reversal, such court has a limited right to make a decision, which this court would not have agreed with *ab initio,* without being reversed.

The question, then, presented in this case is why we reverse the decision of the court of appeals when, by definition, the interest of justice in an individual case is not the usual concern of this court, which, as we have stated above, is the responsibility for assuring that law is properly interpreted, applied, and developed uniformly

throughout the state. The appellate function of seeing to it that justice is done in the individual case is primarily the function of the court of appeals. We conclude, however, that the issue here is of substantial general importance, because the court of appeals has determined that it is appropriate to order a new trial in the interest of justice solely on the affidavit of a witness who, from the record at least, could have been produced at trial and cross-examined.

Although this court has always shown extreme deference to discretionary determinations of the courts which it reviews, we have never hesitated to review or reverse discretionary determinations where the exercise of discretion is based on an error of law. *First Wisconsin National Bank of Oshkosh v. KSW Investments, Inc.,* 71 Wis. 2d 359, 364, 238 N.W.2d 123 (1976). In the instant case, although we do not denominate the court of appeals' reliance on the post-trial affidavits as an error of law, we do conclude that such reliance under these circumstances is inappropriate. Accordingly, we have accepted review, and we reverse the court of appeals determination.

We reverse because affidavits taken under the circumstances here, as a matter of law, are not sufficiently probative to impel a court to conclude with any degree of probability that justice has miscarried or that a new trial would probably produce a different result. *See, State v. Boyce,* 75 Wis. 2d 452, 249 N.W.2d 758 (1977); *Roe v. State,* 95 Wis.2d 226, 290 N.W.2d 291 (1980). We stated in *Schultz v. State,* 87 Wis. 2d 167, 174, 274 N.W.2d 614 (1979), that:

"The standard for granting a new trial in the interests of justice is that the court must be convinced that there has been a probable miscarriage of justice, that the defendant should not have been found guilty, and that a new trial would lead to a different result."

The statement from *Schultz* demonstrates the concern of this court that, from an evidentiary viewpoint, the information placed before a court considering a reversal in the interest of justice must be substantially convincing—and convincing in light of the circumstances of the particular case. We find the affidavits elicited in this case less than convincing in respect to whether there has been a probable miscarriage of justice, because neither LaFrance nor Serio were presented to testify at the postconviction motion hearing when the record demonstrates they clearly could have been produced. Whether they would in fact have testified at such hearing is another question; but had they refused to do so, it would have been clear, as the postconviction motion judge pointed out, that what was proposed was a trial by affidavit.

Although sworn statements may have evidentiary value for many purposes in our jurisprudence, they are of little persuasive value compared to the testimony of witnesses who are produced at trial and who may be challenged by cross examination. Even were we to assume that the reliance on the affidavits could lead to some probability that the wrong person had been convicted, the complete reliance on the affidavits, such as we have in the instant case, raises serious doubts in respect to whether a new trial would indeed lead to a different result. Neither LaFrance nor Serio indicated in his affidavit that he would be willing to testify at a new trial in accordance with the affidavit. At the original trial, LaFrance was produced, and he refused to testify on the basis of fifth amendment rights. While his right to reassert the privilege to remain silent on that basis is now questionable, there is no present assertion in respect to how he would testify or whether he would testify at all.

The questioning of the trial judge made it clear that Serio could have been produced, and yet trial counsel declined the opportunity to do so. Why there was such declination we do not know. As far as the record reveals, Serio has never been charged with the particular crime of which McConnohie was convicted, and it would appear likely that he could at a new trial assert fifth amendment rights not to .testify. Moreover, there was no basis revealed in the affidavits for a trial judge to conclude that either Serio or LaFrance would be a witness that a jury would be likely to find credible. Unless there were some reasonable assurance that Serio and LaFrance would testify in a manner consistent with their affidavits and were likely to be credible witnesses, the result of a new trial very likely would be the same as the original. The affidavits as a matter of law cannot sustain the burden of convincing a court that the result at a new trial would probably be different.

Additionally, moving on to the specific facts of this case, the record reveals, unlike the record in *Garcia v. State,* 73 Wis. 2d 651, 245 N.W.2d 654 (1976), that the entire theory of McConnohie's case—revealed to the jury—was that he was innocent because a specifically named person, Serio, had indeed committed the crime. Evidence was put before the jury that Serio had discussed the gas station robbery in the presence of Goldman and McConnohie. There was no attempt by McConnohie to cover up for Serio in this case, as there was an attempt to protect Rios in the *Garcia* case. Moreover, there was evidence before the jury that Serio was in the lineup when the filling station attendant identified McConnohie as the gunman. Serio was not identified at all, while McConnohie and LaFrance were identified to a degree of substantial certainty. Hence, the evidence in the affidavits remains controverted, for, insofar as the

record shows, the testimony of the eyewitness filling station attendant that McConnohie, not Serio, was the gunman would be produced at a possible new trial as it was at the original one. We have, however, accepted review of this case and reversed the decision of the court of appeals only because of that court's inappropriate reliance upon the affidavits. We hold that, where a trial court or the court of appeals in granting a new trial in the interest of justice relies solely on affidavits of persons not produced at a postconviction hearing when such persons could have been produced, such determination will ordinarily be reversed.

Where a situation similar to that present in the instant case arises, the requirement for a new trial in the interest of justice should be that the new and probative witness have at least asserted under oath that he will in fact testify and make himself or herself available for cross examination at a new trial. The best assurance of that is the production of the witness at the postconviction hearing.

It is clear that discretionary reversals, under sec. 805.15(1), Stats. (for circuit courts), sec. 752.35 (for the court of appeals), and sec. 751.06 (for the supreme court), are indeed discretionary. Accordingly, where discretion is involved, it would be inappropriate for this court to exclude all possibility of reversal on the basis of affidavits alone.[3] Nevertheless, in the ordinary case, affidavits alone are extremely poor evidence to sustain the test required for a reversal in the interest of justice. Affidavits do not in themselves assure that the affiant

---

[3] An affidavit could be taken under some circumstances where even a defendant's constitutional right of confrontation could be satisfied. *See*, for example, the discussion in *State v. Lenarchick*, 74 Wis. 2d 425, 441, 247 N.W.2d 80 (1976), in respect to dying declarations.

will be produced at trial; they do not assure that the testimony will be substantially credible; and they do not without further evaluation, even though they be accepted literally, furnish a basis for a trial court's determination that a different result would ensue absent a discretionary weighing of the quality of the new evidence as compared to the evidence and testimony of those witnesses who appeared at trial to support the defendant's guilt. We accordingly conclude that, in relying upon affidavits alone, there was an insufficient basis upon which the court of appeals could have exercised its discretion.

The discretion which the court of appeals exercised *ab initio* was exercised inappropriately on the basis of affidavits which we conclude were, in the circumstances here, only marginally probative. We reverse the court of appeals.

Because the court of appeals elected to make its decision solely on its own *ab initio* determination of the interest of justice, it concluded it was unnecessary to address itself to the other issues which were before it on appeal. We remand the cause to the court of appeals for its determination of those issues.

*By the Court.*—Decision of the court of appeals is reversed and the cause remanded.