225 Wis.2d 456 (1999)
592 N.W.2d 628
IN the MATTER OF the REFUSAL OF Ralph D. SMYTHE:
STATE of Wisconsin, Plaintiff-Respondent,
v.
Ralph D. SMYTHE, Defendant-Appellant-Petitioner.
No. 97-3191.
Supreme Court of Wisconsin.
Oral argument November 11, 1998.
Decided May 14, 1999.
*458 For the defendant-appellant-petitioner there were briefs by Ralph A. Kalal and Kalal & Associates, Madison and oral argument by Ralph A. Kalal.
For the plaintiff-respondents the cause was argued by James H. McDermott, assistant attorney general, with whom on the brief was James E. Doyle, attorney general.
¶ 1. DAVID T. PROSSER, J.
The petitioner, Ralph D. Smythe (Smythe), seeks review of an order dismissing his appeal of the circuit court's determination that his refusal to submit to a breath test was unreasonable and that his operating privileges should be revoked. The court of appeals denied a request by Smythe's counsel, Ralph A. Kalal (Kalal), for an eightday extension (five working days) to file his brief and then, applying Wis. Stat. § (Rule) 809.83(2) (1995-96),[1] it dismissed the appeal as a sanction for failure to file a brief.
¶ 2. Although the request for extension was the first in this case, Judge Charles P. Dykman noted that Kalal's firm had a "long history" of requesting time extensions and that the court of appeals, in the past, had issued "stern warnings" and taken other actions in an attempt to reduce such requests from the firm. Judge Dykman concluded that a scheduled vacation over the winter holidays by an associate in Kalal's office was not a showing of "good cause" for the requested five-day extension because it did not explain why 40 days was not sufficient time to brief the appeal. *459 Consequently, the court applied what it described as its "usual sanction" for failure to file a brief-dismissal. On January 9, 1998, the court of appeals refused to reconsider that dismissal.
¶ 3. The petitioner seeks review of the following issue: Does Rule 809.83(2), pertaining to the imposition of sanctions, allow the court of appeals to dismiss a party's appeal as a sanction against the party's counsel, based upon the conduct of the counsel in other cases not involving the party and occurring in the past? We conclude that a court of appeals decision to dismiss an appeal may be reversed when there is compelling evidence that that court based its decision, in part, on the past practices of counsel in unrelated matters. Because the court based its decision in this case partly on past, unrelated extension practices by Attorney Kalal, we reverse the order and remand the case for reconsideration.

FACTS AND PROCEDURAL HISTORY
¶ 4. On January 18, 1997, Ralph Smythe was stopped for operating a motor vehicle while under the influence of an intoxicant. He refused to submit to a test of his breath, and as a result, a refusal hearing was held in Sauk County on June 12, 1997, under Wis. Stat. § 343.305. On October 15, 1997, Smythe's operating privileges were revoked by court order. Smythe appealed the order, giving timely notice of the appeal. The record was filed in the court of appeals on November 17, 1997, and the opening brief for this appeal was due on December 29, 1997. Wis. Stat. § (Rule) 809.19[2]
*460 ¶ 5. On the due date, Smythe's counsel, Ralph Kalal, filed a motion to extend for five working days the time in which to file the opening brief. The motion stated that the attorney assigned responsibility for preparation of the appeal brief, Michelle A. Tjader, was on a previously planned vacation from December 25, 1997, through January 4, 1998. The motion further stated that due to the vacation, the attorney was able to complete only a draft of the brief prior to her scheduled vacation.
¶ 6. In an opinion and order dated January 2, 1998, the court of appeals, acting through a single judge, denied the motion to extend the time to file the brief and dismissed Smythe's appeal from failure to file a brief. The court stated:
Appellant's counsel's firm has a long history of extension motions in this court, and we have in the past issued stern warnings and taken other actions to attempt to reduce their number. We have noted the toll these motions take on this court's time and resources. We have advised counsel that extension motions based on counsel's heavy workload fail to make the showing of good cause required by Rule 809.82(2), Stats., when they become routine. In the past, such motions were routine. For much of this past year, counsel's firm has been reasonable in its requests for extensions. However, we have again noted an increase in such motions. That increase, combined with this motion's complete absence of any showing of why the brief could not be completed during the five weeks before counsel's vacation, leads us to conclude that good cause has not been shown. Therefore, we deny the motion.
*461 The court then went on to dismiss the appeal, stating, "Our usual sanction for failure to file an appellant's brief is dismissal."
¶ 7. On January 6, 1998, Kalal filed a renewed motion to extend the time for filing the appeal brief. He advanced three arguments. First, Kalal stated that the court was faulting Kalal for his past requests for extension of time. Kalal argued that his past requests for extension had been no greater than those requested by his opponents. He contended that in 1997, of 80 total briefs he filed, only 15 extensions of time were requested. Kalal asserted that given the fact that he often files two briefs while his opponents file one, his percentage record was actually better than the record of his opponents in the same appeals.
¶ 8. Second, Kalal argued that he would have been better off under the court's internal operating procedures if he would not have filed the motion to extend.[3] He stated that if he had not requested an extension, the court would likely have issued a delinquency notice stating that he must file a brief within five days of issuance of the notice. According to Kalal, under this scenario, he would have been granted an extension and the case would not have been dismissed.
¶ 9. Finally, Kalal acknowledged that he did not provide a sufficient factual background in his original motion for an extension. Kalal attributed the insufficiency to the fact that he interrupted his own family vacation to draft the motion and that his children were present in his office while he drafted the motion.
¶ 10. The court of appeals, in an order dated January 9, 1998, denied Kalal's renewed motion to extend and confirmed the order of dismissal. The court of *462 appeals stated that opposing parties filed an equal number of requests for time extensions because they were generally prosecution offices with limited budgets and no control over their dockets. The court also stated that since Kalal had control over his caseload and budget, he should be able to conduct his business in a manner that did not unduly burden the court of appeals.
¶ 11. In addition, the court explained that a delinquency notice is a statement of forbearance from imposing a sanction which the court might otherwise impose; it is not an extension of time. The court stated, "The fact that we refrain from immediately imposing sanctions in the normal case does not mean that we must do so in the abnormal case."
¶ 12. Finally, the court noted that the renewed motion added little information and therefore failed to demonstrate good cause for an extension. The court of appeals thus denied Kalal's renewed motion to extend the time to file the appellant's brief.
¶ 13. This court granted Smythe's petition for review on the issue whether § (Rule) 809.83(2) allows the court of appeals to dismiss a party's appeal as a sanction against counsel based upon the conduct of counsel in other cases not involving the party and occurring in the past.

STANDARD OF REVIEW
[1]
¶ 14. This controversy involves the court of appeals' discretionary act of dismissing an appeal for failure to file a brief. The Supreme Court "will ordinarily refrain from reviewing a discretionary determination of the court of appeals. "State v. McConnohie, 113 Wis. 2d 362, 369, 334 N.W.2d 903.(1983). "If *463 this court does review, we must review the court of appeals' decision as we would any other exercise of discretion." State v. Johnson, 149 Wis. 2d 418, 429, 439 N.W.2d 122 (1989), confirmed on reconsideration, 153 Wis. 2d 121, 449 N.W.2d 845 (1990). A reviewing court will sustain a discretionary decision if it finds that that the lower court (1) examined the relevant facts, (2) applied a proper standard of law, and (3) used a demonstrative rational process in reaching a conclusion that a reasonable judge could reach. See Loy v. Bunderson, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982). A reviewing court will not sustain a discretionary decision if the decision is based upon an improper standard of law, for that would constitute an erroneous exercise of discretion.

ANALYSIS

I.
¶ 15. This case presents a clash between two competing interests: a litigant's right to appeal and an appellate court's right to manage its heavy caseload.
¶ 16. The right to appeal the final judgment of a circuit court is an important right. For a criminal defendant, the right to appeal has been characterized as "absolute," State v. Perry, 136 Wis. 2d 92, 98, 401 N.W.2d 748 (1987), because it is guaranteed by the Wisconsin Constitution. Wis. Const. art. I, § 21(1).[4] In other situations, the right to appeal is governed by statute. See State v. Newman, 162 Wis. 2d 41, 46, 469 *464 N.W.2d 394 (1991); State v. Rabe, 96 Wis. 2d 48, 59, 291 N.W.2d 809 (1980).
¶ 17. Before the creation of the court of appeals, appeals from the circuit court were reviewed in the Wisconsin Supreme Court. By the mid-1970s this court was swamped with cases. In April 1977, the people amended the Wisconsin Constitution to create an intermediate appellate court, and the legislature acted quickly to implement the amendment with legislation. The first twelve judges of the court of appeals were elected in April 1978, and the court began business the following August.
¶ 18. Since 1978, Wis. Stat. § 808.03(1) has provided that "[a] final judgment or a final order of a circuit court may be appealed as a matter of right to the court of appeals unless otherwise expressly provided by law." (Emphasis added.)
[2,3]
¶ 19. In State v. Borrell, 167 Wis. 2d 749, 778, 482 N.W.2d 883 (1992), this court declared that, "Once the right to appeal is granted, a defendant is protected by the due process and equal protection clauses of the Fourteenth Amendment . ." These protections are not limited to criminal defendants. Due process requires that the right to appeal not be rendered meaningless. Griffin v. Illinois, 351 U.S. 12, 18 (1956). In order for an appeal to be considered meaningful, "the party seeking review must be afforded the right to be heard at a meaningful time and in a meaningful manner." City of Middleton v. Hennen, 206 Wis. 2d 347, 354, 557 N.W.2d 818 (Ct. App. 1996).
¶ 20. Of course, even a right guaranteed by the constitution can be waived or squandered.
¶ 21. Today the court of appeals is the court swamped with cases. The court has an enormous burden. *465 Its caseload has grown tremendously in the twenty plus years since its inception. In 1979, the court's first full year, 1,983 cases were filed with the court of appeals.[5] Combined with 809 cases carried over from the previous year and 13 cases reinstated, the court had 2,805 cases on its docket in 1979. In 1998, the last full year for which statistics are available, 3,577 cases were filed with the court. Combined with the 2,303 cases carried over from 1997, the court had 5,880 cases on its docket in 1998.[6]
¶ 22. Four additional judges have been added to the court since 1978; but, as one writer recently noted, "while judges and staff have increased by only 33% over the past 20 years, the number of appeals filed has increased over 300% of the expected maximum number of appeals."[7] Matthew E. Gabrys, Comment, A Shift in the Bottleneck: The Appellate Caseload Problem Twenty Years After the Creation of the Wisconsin Court of Appeals, 1998 Wis. L. Rev. 1547, 1567.
¶ 23. Originally, the special committee which recommended creating the court of appeals suggested that each judge on the court would be responsible for terminating approximately 100 appeals per year. Id. at 1552. This benchmark has been substantially exceeded from the beginning. In 1979, with 12 judges, the court *466 of appeals terminated 1760 casesan average of 147 terminations per judge. In 1998, with 16 judges, the court terminated 3,777 casesan average of 236 terminations per judge.
¶ 24. Case numbers tell only part of the story. The court of appeals has been overwhelmed by a torrent of motions. In 1997, 4,970 general and substantive motions were filed; 2,358 motions were filed for cases not yet pending before the court; and 2,016 motions were filed for extensions of time on briefs, records, transcripts, et cetera. In total, 9,344 motions were filed with the court in 1997. In 1998, 4,943 general and substantive motions were filed; 2,365 motions were filed for cases not yet pending before the court; and 2,183 motions were filed for extensions of time on briefs, records, transcripts, et cetera. In total, 9,491 motions were filed with the court during 1998.[8] Virtually all these motions required a response.
¶ 25. We are thus presented with a situation in which two important, competing interests have collided. On the one hand, this court must recognize the constitutional or statutory right of a litigant to have the litigant's appeal heard in a timely and meaningful manner in the court of appeals. On the other hand, we must recognize the heavy and overwhelming workload of the court of appeals and permit the court to manage *467 its workload in an efficient, effective manner. With these two competing interests as a backdrop, this court must determine if the court of appeals reasonably exercised its discretion when the court dismissed Smythe's appeal as a sanction for Smythe's counsel's failure to timely file a brief.
¶ 26. It should be emphasized that this case is different from a situation in which a court does not gain jurisdiction because a party or the party's counsel fails to act in a timely manner. For instance, a party must file a notice of appeal within 45 days of entry of judgment if written notice of the judgment is given within 21 days of the judgment. Wis. Stat. § (Rule) 808.04(1). Wisconsin Stat. § (Rule) 809.10(1)(b) provides that: "The filing of a timely notice of appeal is necessary to give the court jurisdiction over the appeal." If a party fails to file a notice of appeal within the time specified by § 808.04(1), the court does not have jurisdiction over the case and has no discretion whether to accept the appeal.[9] In that situation, the court does not examine who should be faulted for the tardy filing or whether the litigant had good cause.
¶ 27. This case involves a discretionary decision by the court of appeals. It does not involve the jurisdiction of the court. In fact, the relevant statute specifically provides that jurisdiction is not affected by a party's failure to follow procedural rules. Wisconsin Statute § (Rule) 809.19 requires an appellant to file a brief within 40 days of filing in the court of the record on appeal. The Rules of Appellate Procedure further provide:

*468 Failure of a person to comply with a requirement of these rules, other than the timely filing of a notice of appeal or cross-appeal, does not affect the jurisdiction of the court over the appeal but is grounds for dismissal of the appeal, summary reversal, striking of a paper, imposition of a penalty or costs on a party or counsel, or other action as the court considers appropriate.
Wisconsin Statute § (Rule) 809.83(2). Because this case does not involve an untimely notice of appeal, dismissal of the appeal for failure to file a brief by the due date involves discretion, not jurisdiction.
¶ 28. Section (Rule) 809.83(2) sets out a variety of sanctions to address a litigant's failure to follow the appellate rules. These include dismissal of the appeal, summary reversal, striking of a paper, imposition of a penalty or costs on a party or counsel, or other actions as the court considers appropriate.
¶ 29. Dismissal with prejudice is a drastic sanction.[10] In Hudson Diesel, Inc. v. Kenall, 194 Wis. 2d 531, 542, 535 N.W.2d 65 (Ct. App. 1995), the court of appeals declared that "Because dismissal of a complaint terminates the litigation without regard to the merits of the claim, dismissal is an extremely drastic penalty that should be imposed only where such harsh measures are necessary." Dismissal of a complaint and dismissal of an appeal are not the same and may not *469 entail identical justifications. Nonetheless, dismissal of an appeal represents an abrupt termination of litigation and in many cases it imposes a finality to both issues and claims. For that reason, it is fitting that we adopt substantially similar criteria for dismissing an appeal.
¶ 30. In Johnson v. Allis Chalmers Corp., 162 Wis. 2d 261, 470 N.W.2d 859 (1991), we stated that "dismissal [of litigation] is improper. . .unless bad faith or egregious conduct can be shown on the part of the non-complying party." Johnson, 162 Wis. 2d at 275, citing Trispel v. Haefer, 89 Wis. 2d 725, 279 N.W.2d 242 (1979). The court also pointed to Trispel for the proposition that dismissal is improper if the non-complying party shows a "clear and justifiable" excuse for the conduct. Johnson, 162 Wis. 2d at 276.
[4]
¶ 31. For a court to dismiss an appeal under § (Rule) 809.83(2), there must be a showing that the party or the party's attorney has demonstrated bad faith or egregious conduct, or there must be a common sense finding that the appeal has been abandoned. In appropriate circumstances, the bad faith or egregious conduct of the party's attorney may be imputed to the party in order to justify the dismissal.[11] However, in *470 these unusual situations, the conduct of the attorney should involve the same litigation.
¶ 32. As we noted in Johnson, a "clear and justifiable" excuse is a defense for not complying with the rules. While we cannot foresee every possible fact situation, it is difficult to conceive how an appellant can be guilty of bad faith or egregious conduct and still have a "clear and justifiable excuse" for non-compliance.
¶ 33. In this case, there is compelling evidence in the record that the court relied impermissibly, at least in part, on Attorney Kalal's past practices in unrelated cases in dismissing the Smythe appeal. In the court's January 2, 1998, order, the court said in part:
We have advised counsel that extension motions based on counsel's heavy workload fail to make the showing of good cause . . .when they become routine. In the past, such motions were routine. For much of this past year, counsel's firm has been reasonable in its requests for extensions. However, we have again noted an increase in such motions. That increase, combined with this motion's complete absence of any showing of why the brief could not be completed during the five weeks before counsel's vacation, leads us to conclude that good cause has not been shown.
¶ 34. The increase in Kalal's motions for extension in unrelated cases was cited as the first reason why Kalal's motion in Smythe's case was denied. This was reaffirmed in the court's January 9, 1998, order, in which the court said:
As stated in [the January 2 order], we denied the motion due to appellant's counsel's long history of *471 extension motions in this court and the inadequate showing made in this particular motion.
¶ 35. There is no evidence in the record of Smythe's complicity in or knowledge of the delay in filing the brief nor his involvement in any of Kalal's previous motions for extension. As a result, we are unable to discern from the record the kind of egregious conduct by the attorney which may properly be imputed to the client. Hence, the court applied an improper standard of law in its decision and we must reverse.
¶ 36. Although we remand to the court of appeals for reconsideration, we think it unlikely the court will find bad faith or egregious conduct in a request for an extension of five working days overlapping the New Year's weekend. Kalal's original motion made a point that "No other requests for extensions of time have been made herein or are contemplated." This does not suggest the type of protracted delay or abuse that will justify dismissal of an appeal. Absent Kalal's motions in unrelated matters, this case does not appear to be "the abnormal case."

II.
¶ 37. Our reversal of the dismissal order in this case should not be interpreted as an impairment of the court's power to dismiss appeals in appropriate circumstances. Recently, we denied a petition for review in another case, State v. Baake, 97-3852-CR, in which the court of appeals dismissed an appeal based upon Baake's failure to file a brief and appendix in compliance with Wis. Stat. § (Rule) 809.19. In that dismissal, the court properly utilized its power to sanction under *472 § (Rule) 809.83(2).[12] This court can be expected to affirm dismissals based upon bad faith, egregious conduct, or a litigant's effective abandonment of the appeal.
¶ 38. We will also support sanctions directed personally at those attorneys whose slipshod practices abuse the system, create unnecessary work, and delay speedy justice for others. Section (Rule) 809.83(2) invites penalties, costs, and other actions the court considers appropriate. Subsection (1) of the statute authorizes double costs, damages, and reasonable attorneys fees as sanctions available for appeals taken for the purpose of delay, and these tough sanctions may also be applied under subsection (2) "as the court considers appropriate." The court of appeals might consider removing a non-complying attorney from the litigation. It may also wish to refer particular attorneys to the Board of Attorneys Professional Responsibility for discipline.

III.
¶ 39. In remanding this case to the court of appeals, we note that the order denying Kalal's motion and dismissing Kalal's appeal was issued by the Presiding Judge, acting alone.
¶ 40. The Presiding Judge has a responsibility to exercise continuous leadership in management of the court's case assignment and processing systems and to initiate development of policy concerning the court's internal operations. The Presiding Judge has a duty to oversee and address the court's heavy caseload.
*473 ¶ 41. According to the court's internal operating procedures, "Following filing of briefs, the Presiding Judge schedules a screening conference for members of the panel. . . .One-judge appeals are identified and assigned by the Presiding Judge . . . ." Wis. Ct. App. IOP VI(1) (June 13, 1994) (Emphasis added).
¶ 42. The motions judge is the judge designated by the Presiding Judge to hear motions. In the event the motions judge is not available, any other judge may consider a motion. Wis. Ct. App. IOP VI(3). The motions judge "may act on all motions, except those that reach the merits or preclude the merits from being reached, which can only be acted on by the panel. The motions judge may direct that any motion be acted on by the panel. The panel considers motions. . .that preclude the merits from being reached. . . .The panel considers these motions at regularly scheduled or specially called motions conferences . . . ." Wis. Ct. App. IOP VI(3)(c).
¶ 43. In one-judge appeals specified in Wis. Stat. § 752.31(2), "Motions and petitions . . .are decided by one Court of Appeals judge." Wis. Ct. App. IOP VI(12)(b) (June 13, 1994). Standing alone, this provision explains how a single judge can deny a motion and dismiss an appeal. But read together with either IOP VI(1) in which assignment of appeals is triggered by the filing of a brief or IOP VI(3)(h) in which extension motions are occasionally presented to the motions judge, the provision does not make clear how this case came before the Presiding Judge. The procedure ought to be clarified for future cases.
[5]
¶ 44. Because the court based its order to dismiss Smythe's appeal in part on the past, unrelated practice *474 of Smythe's attorney, we reverse and remand the case to the court of appeals for reconsideration.
By the Court.The order of the court of appeals is reversed and the cause remanded.
¶ 45. ANN WALSH BRADLEY, J. (concurring).
I agree with the majority that the court of appeals did not articulate a permissible reason to dismiss Smythe's appeal. Requesting a five working day extension to file a brief, absent more, does not justify the imposition of this drastic penalty under Wis. Stat. § (Rule) 809.83(2).
¶ 46. As we said most recently in Johnson v. Allis Chalmers Corp., 162 Wis. 2d 261, 275-76, 470 N.W.2d 859 (1991), the sanction of dismissal is only appropriate where the record reflects that a party's failure to comply with a court order both is without excuse and egregious. While Attorney Kalal's conduct may have been without excuse, nowhere in the court of appeals' dismissal of Smythe's appeal or in its reconsideration of that dismissal is there any suggestion that it was egregious.
¶ 47. Further, there is nothing in the record that would support a finding that Attorney Kalal's conduct in this case was egregious. Even the majority opinion hesitatingly acknowledges this when it states:
we think it unlikely the court will find bad faith or egregious conduct in a request for an extension of five working days overlapping the New Year's weekend. . . .This does not suggest the type of protracted delay or abuse that will justify dismissal of an appeal. Majority op. at 471.
¶ 48. I therefore see no point in remanding this case to the court of appeals for the purpose of having it *475 review the same record to reconsider its dismissal. Quite simply, on this record dismissal is not an option. There is no reason to have the already overburdened court of appeals take additional time to reconsider its dismissal when the answer is foreordained. Accordingly, I would remand the case to the court of appeals to have it consider the merits of Smythe's appeal.
¶ 49. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this opinion.
NOTES
[1] All references to the Wisconsin Statutes are to the 1995-96 version unless otherwise noted.
[2] Wis. Stat. § (Rule) 809.19(1), states in pertinent part: "The appellant shall file a brief within 40 days of the filing in the court of the record on appeal."
[3] Wis. Ct. App. IOP VI(3)(h).
[4] Article I, § 21(1) of the Wisconsin Constitution provides:

Writs of error shall never be prohibited, and shall be issued by such courts as the legislature designates by law.
[5] All statistical references to calendar year 1979, unless otherwise noted, are to a report dated April 1, 1980, by Judge John A. Decker, the Chief Judge of the Wisconsin Court of Appeals.
[6] All case statistics from calendar year 1998, unless otherwise noted, are from a cumulative statistical report dated January 4, 1999, issued by Marilyn L. Graves, Clerk of the Wisconsin Court of Appeals.
[7] The expected maximum number of appeals was 1200 appeals per year.
[8] All motion statistics from calendar years 1997 and 1998 are from internal memoranda dated January 5, 1998, and January 5, 1999, from Marilyn L. Graves, Clerk of the Wisconsin Court of Appeals, to the judges of the Court of Appeals. Each memo summarized and totaled from the preceding year the monthly data on motions contained in the clerk's monthly statistical reports on the court of appeals. These monthly reports are public documents. Current monthly reports can be found on the court's website: www.courts.state.wi.us.
[9] For another situation in which jurisdiction was not acquired because of late filing, see McDonald Lumber Co. v. Wis. Dept. of Revenue, 117 Wis. 2d 446, 344 N.W.2d 210 (1984).
[10] See 20 Jeremy C. Moore et al., Moore's Federal Practice § 303.31(3)(d) (3d ed. 1998) ("Dismissal of an appeal is a drastic sanction that should not be imposed for minor infractions of the rules."). See also Dabney v. Burrell, 67 F.R.D. 132, 133 (D. Md. 1975) ("Dismissal with prejudice is a drastic sanction. It is reserved for extreme situations where there is compelling evidence of willful default."); Wright & Miller, Federal Practice and Procedure: Civil § 2369, at 340 (2d ed. 1995).
[11] The conduct of an attorney may be imputed to a client if the client failed to act as a reasonable and prudent person in engaging an attorney of good reputation, failed to rely upon the attorney to protect his or her rights, and failed to make a reasonable inquiry concerning the proceedings. Charolais Breeding Ranches, Ltd. v. Wiegel, 92 Wis. 2d 498, 514, 285 N.W.2d 720 (1979); Wagner v. Springaire Corp., 50 Wis. 2d 212, 221, 184 N.W.2d 88 (1971); Paschong v. Hollenbeck, 13 Wis. 2d 415, 423, 108 N.W.2d 668 (1961). Evidence of complicity, cf. United States v. Ford, 806 F.2d 769, 770 (7th Cir. 1986), or inexcusable neglect, cf. Charolais Breeding Ranches, 92 Wis. 2d 498, strengthens the case against the client.
[12] See State ex rel. Blackdeer v. Levis Tp., 176 Wis. 2d 252, 260, 500 N.W.2d 339 (1993), for discussion of summary reversal as a sanction for failure to file a brief.