ANN WALSH BRADLEY, J.
¶ 48. (dissenting). I agree with the majority that a reviewing court's discretionary power of reversal should be sparingly exercised. Majority op., ¶¶ 5, 42. I part ways with the majority's analysis, however, because it formulates a new rule that arbitrarily limits our powers. The majority declares that a reviewing court cannot base a decision to reverse in the interest of justice on a reassessment of the evidence. Id., ¶¶ 10, 26.
| 49. Its decision to limit a reviewing court's discretionary powers in this manner is extraordinary. It conflicts with the expressed purpose of the discretionary reversal statute and contradicts decades of precedent. Because this court's discretionary powers of *689 reversal are coterminous with the powers of the court of appeals, the majority inexorably limits the discretionary powers of both.
¶ 50. The exercise of discretion is a core judicial function. The court of appeals' decision to reverse in the interest of justice is an exercise of discretion entitled to a deferential standard of review. Even if we may disagree with the result, this court "will uphold the discretion of a court [it is] reviewing if the decision made on appropriate facts and the correct law is one which a court reasonably could have reached." McConnohie, 113 Wis. 2d 362, 370, 334 N.W.2d 903 (1983).
¶ 51. I conclude that the court of appeals decision to reverse in the interest of justice should be upheld. Because the court of appeals' discretionary decision was based on appropriate facts and the correct law, and was a decision that a court could reasonably reach, I respectfully dissent.
I
¶ 52. The majority errs by creating a new rule that limits the discretion of reviewing courts: a reviewing court's decision to reverse in the interest of justice cannot be based on a reassessment of the evidence. See Majority op., ¶ 34. This arbitrary limit on a reviewing court's discretion conflicts with the expressed purpose of the discretionary reversal statute.
¶ 53. For over a century, appellate courts in Wisconsin have had the power to reverse judgments in the interest of justice. Since its initial codification in 1913, this power has been broadly stated:
In any action or proceeding brought to the supreme court by appeal or writ of error, if it shall appear to that court from the record, that the real controversy *690 has not been fully tried, or that it is probable that justice has for any reason miscarried, the supreme court may in its discretion reverse the judgment or order appealed from, regardless of the question whether proper motions, objections, or exceptions appear in the record or not, and may also, in the case of reversal, direct the entry of the proper judgment or remit the case to the trial court for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure ... as shall be deemed necessary to accomplish the ends of justice.
Wis. Stat. § 2405m (1913). The statute's enactment was part of a movement to simplify the law so that technicalities would not be permitted to thwart justice. See Marvin B. Rosenberry, J., Recent Progress in Judicial Administration and Procedure in Wisconsin, 5 Marq. L. Rev. 3, 4-5, 9 (1920).
¶ 54. The statute has subsequently gone through slight revisions and has been renumbered as Wis. Stat. § 751.06. The substance, however, is substantially the same:
In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.
Wis. Stat. § 751.06.
*691 ¶ 55. When the court of appeals was created in 1978, the legislature enacted a nearly identical statute, Wis. Stat. § 752.35, granting the same power of discretionary reversal to the court of appeals.[1] State v. Schumacher, 144 Wis. 2d 388, 399-400, 424 N.W.2d 672 (1988). Because Wis. Stat. § 751.06 and Wis. Stat. § 752.35 share the same language, this court has determined that "the power of reversal under these statutes is identical." Vollmer v. Luety, 156 Wis. 2d 1, 19, 456 N.W.2d 797 (1990); see also State v. Avery, 2013 WI 13, ¶ 38 n.17, 345 Wis. 2d 407, 826 N.W.2d 60 ("The discretionary reversal power of this court and the court of appeals is coterminous.").
¶ 56. The language used in Wis. Stat. §§ 752.35 and 751.06 indicates that the legislature intended the discretionary reversal power of reviewing courts to cover a broad range of situations. For example, they both permit reversal when "it is probable that justice has for any reason miscarried." Wis. Stat. §§ 751.06, 752.35 (emphasis added). Further, under the statutes, neither court's ability to reverse in the interest of justice is limited to proper motions or objections appearing in the record. Id. "[The statutes'] very breadth, as a matter of statutory interpretation, indicates that *692 they are meant to provide courts with the opportunity to exercise their discretion without constraint." Monica Mark, A Fearless Search for the Truth No Longer: State v. Henley and Its Destructive Impact on New Trials in the Interest of Justice, 2012 Wis. L. Rev. 1367, 1386.
¶ 57. This court has explained that "[t]his broad discretion enables [the court of appeals] to achieve justice in individual cases." Vollmer, 156 Wis. 2d at 21; see also State v. Mathis, 39 Wis. 2d 453, 458, 159 N.W.2d 729 (1968) ("The statute is intended as an emergency exit for the probably innocent."). Considering that "[t]he function of the judiciary is the administration of justice," In re Kading, 70 Wis. 2d 508, 518, 235 N.W.2d 409 (1975), the breadth of the discretionary reversal statute is appropriate.
¶ 58. By determining that appellate discretion does not extend to a reassessment of the evidence, the majority erroneously constricts the discretionary power of reviewing courts. It removes a swath of cases from review, opening the door for the potential of an unaddressed and unreviewable miscarriage of justice. The majority's determination to limit reviewing courts' discretion runs counter to the broad language of the statute and its expressed purpose "to accomplish the ends of justice." Wis. Stat. § 752.35.
¶ 59. The majority opinion is further flawed because it contradicts decades of Wisconsin precedent permitting reviewing courts to reverse in the interest of justice when the evidence raises great doubts about whether the state has met its burden, suggesting that justice has miscarried. See State v. Fricke, 215 Wis. 661, 667, 255 N.W. 724 (1934) ("Occasionally when such grave doubts exist in our minds regarding guilt of a defendant as to make us conscientiously believe that justice probably has miscarried, we exercise the au *693 thority specifically given to us by section 251.09 [subsequently renumbered as Wis. Stat. § 751.06], and reverse the judgment for a new trial.").
¶ 60. This court has oft recognized that reviewing courts may reassess the evidence when considering whether justice has miscarried. For example, in Hintz, 200 Wis. 636, 229 N.W.2d 54 (1930) the court's decision to reverse in the interest of justice was based on an assessment of the evidence. In that case, the court reviewed a conviction for obtaining money under false pretense. It observed that an essential element of the charge was the intent to defraud. The court recited the evidence relating to intent, which strongly favored the defendant, and acknowledged that weighing this sort of evidence is typically a jury function. Id. at 641. However, the court's analysis did not stop there. After stating that the "evidence leaves the question of defendant's intent to defraud in the greatest of doubt," the court concluded that "[w]hile it is the function of the jury to resolve this doubt, it seems probable to us that justice has miscarried by the verdict rendered. Under such circumstances it is within our power to order a new trial." Id. at 642. Accordingly, the court reversed the conviction and remanded the cause for a new trial. Id.
¶ 61. Similarly, in Hughes v. State, 219 Wis. 9, 261 N.W. 670 (1935), the court's determination that justice had been miscarried was based on its review of the evidence. There, although the court observed that sufficient evidence had been presented to raise a jury question, it expressed doubts regarding the witness's version of events: "the story of the complaining witness is inherently improbable." Id. at 11 — 12. It further described the story presented as "doubtful" and indicated that the circumstances added to its "misgivings." *694 Id. Due to its uneasiness with the evidence presented, the court ordered a new trial in the interest of justice:
While none of the evidence heretofore reviewed destroys as a matter of law the credibility of the state's witness, we are satisfied that there are so many circumstances casting doubt upon the story of complaining witnesses, and that the evidence so strongly preponderates against her story, that there is good ground to conclude that justice has probably miscarried. In view of this conclusion, we deem it proper, in the exercise of authority conferred by sec. 251.09 Stats, [subsequently renumbered as Wis. Stat. § 751.06], to order a new trial.
Id. at 13.
¶ 62. The cases described above are but a sample of the many decisions granting reversal in the interest of justice based solely on a reassessment of the evidence. See, e.g., Kemp v. State, 61 Wis. 2d 125, 137, 211 N.W.2d 793 (1973) (granting new trial in the interest of justice because evidence as a whole predominated on Kemp's side); Combs v. Peters, 23 Wis. 2d 629, 129 N.W.2d 174 (1964) (given the evidence of record tending to show that the defendant was the offending driver, court determined that the jury finding to the contrary was probably a miscarriage of justice, reversed the judgment, and remanded for a new trial); Schuh v. State, 221 Wis. 180, 183, 266 N.W. 234 (1936) (reversing in the interest of justice where the circumstances under which the alleged act took place were "inherently improbable"); Jacobson v. State, 205 Wis. 304, 309-10, 237 N.W. 142 (1931) (determining that "it is probable that justice has been miscarried" when the evidence in a bastardy case "indicate [d] very strongly" that the defendant was not the child's father); Paladino v. State, 187 Wis. 605, 606, 205 N.W. *695 320 (1925) (determining that despite the lack of errors, the case against defendant was very "doubtful" and defendant should have the opportunity to present the case to another jury); State v. Murdock, 2000 WI App 170, ¶¶ 40, 45, 238 Wis. 2d 301, 617 N.W.2d 175 (ordering new trial in the interest of justice because, considering the evidence presented at trial, there was a substantial probability that a new trial would produce a different result).
¶ 63. Although the majority does acknowledge Kemp and attempts to distinguish it on the facts, it misses that Kemp did the very thing that the majority now states is prohibited: it reversed in the interest of justice based on a reassessment of the evidence. The failure to address this aspect of Kemp, as well as numerous other cases taking the approach that it now disavows, greatly undermines the majority opinion.
II
¶ 64. In contrast to the majority, I conclude that the court of appeals' decision to reverse in the interest of justice should be upheld. Its decision to reverse in the interest of justice is an exercise of discretion entitled to a deferential standard of review. This court "will uphold the discretion of a court [it is] reviewing if the decision made on appropriate facts and the correct law is one which a court reasonably could have reached." McConnohie, 113 Wis. 2d at 370. Here, the court of appeals' discretionary decision was based on appropriate facts and the correct law, and was a decision that a court could reasonably reach.
¶ 65. The court of appeals' decision accurately recited the following facts of this case. State v. Kucharski, No. 2013AP557-CR, unpublished slip op. *696 (Wis. Ct. App. May 6, 2014). Kucharski, charged with two counts of first degree intentional homicide, pled not guilty by reason of mental defect. Id., ¶ 3. He asserted that he began having hallucinations and hearing voices in 2005. Id., ¶ 6. Shortly thereafter, he moved in with his parents and became very isolated. Id., ¶¶ 6-7. The voices continued, making derogatory remarks and commanding Kucharski to do things. Id., ¶ 8. In 2009, he began keeping a journal to help him sort out what the voices meant. Id., ¶ 11. By 2010, this journal consisted of 40-50 pages of notes and diagrams. Id.
¶ 66. On the day he killed his parents, the voices told Kucharski to "simply end it." Id., ¶ 12. He intended to follow their directives by killing his parents and then killing himself in a shoot-out with the police. Id., ¶ 13. However, by the time the police arrived, he forgot to have the shootout. Id., ¶ 14.
¶ 67. Kucharski presented the reports of two psychiatrists to support his defense. Both opined that he was suffering from schizophrenia at the time he killed his parents. Id., ¶ 15. One determined that Kucharski lacked substantial capacity to appreciate the wrongfulness of his actions. Id. Similarly, the other determined that he lacked the capacity to appreciate the wrongfulness of his actions and to conform his behavior to the requirements of the law. Id.
¶ 68. The psychiatrists based their opinions on interviews with Kucharski, his actions on the day of the incident, recordings of his 911 call shortly after the incident, his responses on the SIRS-II test (which is used to detect feigning or exaggeration of mental illness), his journal, clinical observations by a psychologist, and information from police reports. Id., ¶¶ 17-25. Kucharski also presented the report of a *697 psychologist, who indicated that he would not have a different conclusion regarding Kucharski's mental responsibility. Id., ¶ 15.
¶ 69. After reciting the above facts, the court of appeals correctly described the governing law for this case, Wis. Stat. § 752.35, which permits the court of appeals to reverse in the interest of justice when "it is probable that justice has for any reason miscarried." Id., | 32. It acknowledged that it may conclude that justice has miscarried if there is a substantial probability of a different result on retrial. Id., ¶ 33. It also acknowledged that it may exercise its discretion only in exceptional cases. Id.
¶ 70. Reasonably applying this law to the facts of the case, the court of appeals determined that the evidence " 'predominates quite heavily on the side of the defendant on the issue of his mental responsibility,' and that, consequently, 'justice has miscarried and . . . a new trial will probably bring a different result.'" Id., ¶ 44 (quoting Kemp, 61 Wis. 2d at 138). It observed that Kucharski was suffering from schizophrenia when he killed his parents; the expert evidence supporting his defense was uncontroverted; and there was a complete lack of evidence of alternative explanations for Kucharski's behavior. Id., ¶¶ 36-41.
¶ 71. The court of appeals' analysis is consistent with a long line of cases permitting courts to reverse in the interest of justice based on a reassessment of the evidence. See supra, ¶¶ 12-15. This court should be hesitant to cabin that discretion.
¶ 72. Rather than creating a new rule of law that limits the discretionary powers of reviewing courts, I would apply well established existing precedent and give deference to the court of appeals discretionary decision. Because the court of appeals' exercise of its *698 discretion was based on appropriate facts and the correct law, and was a decision that a reasonable court could make, it was not erroneously exercised and should be upheld. Accordingly, I respectfully dissent.
¶ 73. I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 Wisconsin Stat. § 752.35 provides:
Discretionary reversal. In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.